[No. 10940.  Department Two.  September 20, 1913.]

## J. S. Thorp et al., Respondents, v. J. W. McBride, Appellant.[1]

Waters and Water Courses—Appropriation—Beneficial Use—Evidence—Sufficiency. The evidence is insufficient to warrant findings that the owner of a townsite, who had acquired the location rights of a placer mining claim and conducted water to the townsite by a ditch across public domain, in 1899, had any right to the water in the ditch, where it appears that little if any beneficial use had ever been made of the water, and since 1902, it had been going to waste, no mineral was every discovered on the claim, the townsite was a deserted village, and the only prospect of his making any use of the water in the future was based upon remote, speculative and fanciful intentions.

Cross-appeals from a judgment of the superior court for Okanogan county, Pendergast, J., entered August 31, 1912, apportioning the water in a ditch, after a trial on the merits to the court.  Reversed on respondents' cross-appeal.

*L. H. Prather* and *Neal & Neal*, for appellant.
*Smith & Gresham*, for respondents.

Morris, J.—This is a contest over a water ditch and the use of the water flowing therein.  There is much testimony and much conflict, but we find the facts to be as follows:

In 1899, appellant purchased the location rights to the Commonwealth placer mining claim, in Myers creek mining district, in Okanogan county, and in October, 1901, obtained a patent.  No mineral was ever discovered within the boundaries of the placer claim, and it is apparent that the real intent of the location was for townsite purposes upon which to locate the town of Bolster.  In October, 1899, appellant constructed a small ditch from Myers creek, and conveyed water from the creek to the townsite, a distance of about two and three-fourths miles.  For part of this distance, the

[1]Reported in 135 Pac. 228.

water was conveyed through the ditch, and the remainder of the way, through a small flume, the ditch and flume being over and upon public lands. An attempt was made to appropriate the water by posting and recording a water notice. It is, however, conceded that this notice was deficient, and no rights are now predicated thereon. The carrying capacity of the ditch and the amount of water flowing therein cannot be determined by the evidence; nor can we find that it was used by the appellant for any purpose other than the washing of gravel for a few hours in the fall of 1899, and a like use in subsequent years, possibly as late as 1904, though the evidence as to this later use is so indefinite and so contradictory that it is difficult to make a finding thereon.

Bolster did not prosper, and in 1902 it was, and has since remained, a deserted village. Upon reaching the townsite, the water was permitted to run wild, no attempt being made to confine it to any particular channel or store it for future use. It is probable, although the evidence is not clear, that a small portion of the water was used by the few inhabitants of Bolster as late as 1901. The evidence also discloses that some of the inhabitants obtained water from artesian wells, and others from Myers creek. Some use was also made of the water in making a few thousand brick, and for mixing plaster. It is also testified to that the water was used for filling the vats used by a small shingle mill, although we are inclined to the view that the weight of the evidence is to the effect that the shingle mill obtained the small amount of water required first from Nicholson creek, and later on, after it changed its location, from Myers creek. It is impossible to determine the amount of water it used, but it must have been a small amount, and as before stated, the great body of the water after reaching Bolster was permitted to run to waste. The evidence does not disclose any use made of this water by any one at Bolster subsequent to 1901.

In 1902 respondents located a homestead upon the lands across which the ditch ran, and appellant informed them

they might tap the ditch and make such use of the water as they desired.  Later on and in the same year, they made inquiry as to appellant's right to the water and the ditch, and convinced themselves that appellant had no valid right to either; and from this time, while there is much dispute, we are inclined to the view that they claimed the ditch through their lands as their own.  There is much dispute as to whether the waters ran in the ditch north of respondents' lands in 1901; but whether it did or not, it is clear that no beneficial use was ever made of it except for an hour or two.  It is also clear that the flume north of respondents' lands was permitted to go to ruin and no pretense was ever made of repairing it.  In 1905, respondents prepared a notice of appropriation of this water, and in October, 1906, the same was posted and recorded.  Appellant claims that he made necessary repairs of the ditch subsequent to 1902, which is seriously disputed by respondents; but it is clear that, if appellant did make such repairs, it was not for the purpose of making any beneficial use of the water, but because he believed that by so doing he would retain rights to the ditch and water.

The court below held that appellant was the owner of the ditch across the respondents' land, and had the prior right to the use of the water to the extent of 20 miner's inches, under a four-inch pressure, and that the balance of the water belonged to the respondents.  From this decree, each party has appealed, claiming the right to all the water to the entire exclusion of the other party.  We do not understand the theory upon which the decree is based in awarding 20 miner's inches under a four-inch pressure.  We find nothing in the record as to any present or contemplated use of such measurement of water.  The appellant, so far as we can find, has made no beneficial use of this water since 1902, except that he testified that, on one occasion in 1904, he made some slight use of it in connection with some drilling in a prospect hole.  So far as any beneficial use to which appel-

lant has put this water since 1902, it might be held that non-user has worked an abondonment, were it not for the fact that it is evident that there was no intention on his part to abondon it; and since abandonment must consist of both act and intent, the facts will not justify a holding that there has been an abandonment by nonuser alone; but while that' is true, it is also well established that water must be put to some beneficial use. Permitting the amount of water award-ed to appellant to run through this ditch until it passes north of respondents' lands and then run to waste until in the indefinite future its use will be required in Bolster, or in the mining operations near there, is altogether too remote and speculative to be favored in the law. Bolster has been nothing but a townsite since 1902, and we can find no tan-gible evidence that it ever will be anything more. The mines referred to by appellant are but prospects. The record does not indicate any benefit to which they have applied this water or any use they ever will make of it. Like the town of Bolster, they have no present, but live in the memories of the past and in hopes for the future, and the future is based upon visions too remote for the law to recognize. Appellant, when asked to what uses he intended putting this water, re-plied, "Irrigation, mining, domestic and power," but we can find nothing in the record to make his purpose more sub-stantial than intention. He has made no attempt since 1902 to make any such use of this water, and we hardly think the law will justify him in retaining it and permitting it to run to waste until, at some unknown future time, it will be re-quired for such purposes as he indicates. It is altogether too remote, speculative and fanciful; and since his intent is coupled with a purpose too remote and speculative to be rec-ognized in law, it ought not to save him from the conse-quences of his nonuser. The evidence discloses no present "irrigation, mining, domestic or power" uses to which this water can be applied, either by appellant or others, and to say that its use shall be preserved because of some future use

that might be developed is to grant the use of water for no other use than that of speculation, which the law will not justify. *Weaver v. Eureka Lake Co.*, 15 Cal. 271.

The judgment is reversed upon respondents' cross-appeal, and the cause remanded with instructions to grant respond-ents the relief prayed for, and their costs.

CROW, C. J., FULLERTON, MAIN, and ELLIS, JJ., concur.