957 P.2d 1241 (1998)
135 Wash.2d 582
STATE of Washington, DEPARTMENT OF ECOLOGY, Respondent,
v.
George THEODORATUS, Appellant.
No. 64527-2.
Supreme Court of Washington, En Banc.
Argued September 24, 1997.
Decided July 2, 1998.
*1243 Thomas D. Mortimer, Seattle, Amicus Curiae on behalf of Washington Water Utilities Council.
John Woodring, Olympia, Amicus Curiae on behalf of Washington Association of Realtors and Building Industry Association of Washington.
Rachael Paschal, Seattle, Amicus Curiae on behalf of Center for Environmental Law & Policy and Washington Environmental Council.
Charles Lean, Olympia, for Appellant.
Christine Gregoire, Attorney General, Philip Thomas McDonald, Assistant Attorney General, Deborah Lenora Mull, Assistant Attorney General, Olympia, for Respondent.
*1242 MADSEN, Justice.
The primary issue in this case is whether a final certificate of water right, i.e., a vested water right, may be issued based upon the capacity of a developer's water delivery system, or whether a vested water right may be obtained only in the amount of water actually put to beneficial use. Here, the Pollution Control Hearings Board concluded that under the circumstances in this case system capacity, or a "pumps and pipes" measure, would be the method of quantification for purposes of the final certificate of water right. Clerk's Papers (CP) at 20. Accordingly, the Board held that the Department of Ecology could not condition Appellant's extension of time in which to perfect a water right by providing that actual beneficial use of water would be the measure of that right. We conclude that state statutory and common law does not allow for a final certificate of water right to be issued based upon system capacity. We affirm the superior court's reversal of the Board's decision, with some modification.

FACTS
In 1973, Appellant George Theodoratus and Ray Drake formed a limited partnership to build a residential development near the Skagit River in Skagit County, and applied to the Department of Ecology for a water right to serve the development. The application was approved pursuant to a "Report of Examination" issued July 24, 1973. The report included language purporting to create a vested water right which would entitle the applicant to a water certificate issued under RCW 90.03.330 once a water supply system was capable of delivering water, even though some or most of the lots were vacant. Quantification of a water right based upon system capacity, rather than the amount of water used, is referred to as a "pumps and pipes method." This method has been used by the Department for at least the past 40 years, and hundreds of permits have been issued with pumps and pipes language.
*1244 Appellant's water system will ultimately be responsible for serving Appellant's development and an additional 30 residential units outside the development under a coordinated water system plan approved by the State Department of Health. Construction of Appellant's water system began in 1973 with the installation of one well. To date, water lines are available to 93 of the 253 lots platted in the development.
The permit originally granted to Appellant called for completion of the development by 1980. Due to various litigation, the project was delayed several times. A recession in the 1980's in the area also slowed the project. The Department granted several extensions to Appellant. From 1985 to 1992 the Department file was inactive. In 1992, Appellant requested an extension to 2001, which the Department at first denied. Appellant appealed the denial. The Department then changed its decision and granted an extension to January 1, 2001. The Department placed four conditions on the extension. Numbers 1, 2, and 4 provide (1) that the extension would be the last under Appellant's groundwater permit; (2) that monthly measurements of groundwater withdrawals and connections would be required, and (4) that any prior inconsistent conditions were superseded. Condition (1) has been withdrawn by Ecology. The third condition basically provides that a vested water right would be determined based upon actual application of water to beneficial use, not on system capacity. There is no question that this third condition reflected a significant change in the basis for issuance of a final certificate of water right. Appellant appealed the new conditions.
The Board struck the conditions which required actual application of water to beneficial use as a measure of the final certificate of water right to be issued. The Board concluded that "[t]he `pumps and pipes' interpretation correctly expresses the application of water to a beneficial use in the context of this case." CP at 20. The Board held that Appellant may validly appropriate water for all the lots his system is capable of serving and such appropriation would result in a vested water right entitled to a water right certificate.
The Department appealed to superior court. That court reversed, holding that the Department had discretion to condition Appellant's permit extension by providing that a final certificate of water right would be issued in the amount of water actually put to beneficial use. The court held that beneficial use is not defined by the capacity of the system, that the determination of reasonable beneficial use will be made at the time a final certificate of water right is at issue, and then a certificate will issue for the instantaneous and annual quantity of water that has been put to actual beneficial use. The court further held, however, that "[r]easonable use... may include a recognition of variable conditions, including the capacity of a public water system's completed delivery system to the extent the water will be beneficially used for a normal increase in population within a reasonable period of time." CP at 399-400.
Appellant appeals the superior court decision, and the Department cross-appeals, contending the superior court's definition of beneficial use is in error.

ANALYSIS
Proceedings before the Pollution Control Hearings Board are governed by the Administrative Procedure Act, RCW 34.05. When reviewing the Board's decision, this court sits in the same position as the superior court and applies the standards of review in RCW 34.05.570 directly to the agency record. Tapper v. Employment Sec. Dep't, 122 Wash.2d 397, 402, 858 P.2d 494 (1993). Where the construction of statutes is concerned, the court engages in de novo review under the error of law standard. City of Pasco v. Public Employment Relations Comm'n, 119 Wash.2d 504, 507, 833 P.2d 381 (1992); RCW 34.05.570(3)(d). As the agency charged with administration of the relevant statutes, Ecology's interpretation of those statutes is entitled to great weight if they are ambiguous. Pasco Police Officers Ass'n v. City of Pasco, 132 Wash.2d 450, 458, 938 P.2d 827 (1997).

*1245 Determination of Water Right
Application of water to "beneficial use" and "perfection" of an appropriative right are terms of art, with well-established meanings in western water law. Water must actually be put to a beneficial use before a water right vests. "The principle that water must be used for a beneficial purpose is a fundamental tenet of the philosophy of water law in the West." Department of Ecology v. Acquavella, 131 Wash.2d 746, 755, 935 P.2d 595 (1997). "Beneficial use" refers to both the type of use and the measure and limit of the water right. Id.; Department of Ecology v. Grimes, 121 Wash.2d 459, 468, 852 P.2d 1044 (1993); Neubert v. Yakima-Tieton Irrigation Dist., 117 Wash.2d 232, 237, 814 P.2d 199 (1991). In the present case, there is no doubt that water for Appellant's development is a beneficial use in the first sense, i.e., an acceptable "type of use" of water. It is the latter sense that is in dispute here. Appellant appears to equate system capacity with beneficial use insofar as the term means the measure and limit of the water right, and the Board agreed. This equation is in error. Relevant statutes, case law, and recent legislative history leave no doubt that quantification of Appellant's water right for purposes of issuing a final certificate of water right must be based upon actual application of water to beneficial use, not upon system capacity.
Water in Appellant's system will be drawn from wells, which means that the appropriated water is groundwater. Appropriations of public groundwater are governed by RCW 90.44. Issuance of a final certificate of groundwater right is provided for in RCW 90.44.080. Surface water provisions must also be examined because RCW 90.44.060 provides that statutes concerning surface water appropriations, RCW 90.03.250 through RCW 90.03.340, apply to groundwater appropriations, including issuance of groundwater permits and groundwater right certificates.
Although construction of a water supply system is necessary when appropriating water, the statutes also require actual application of water to beneficial use in order to perfect a water right. RCW 90.03.260 provides that an application for a permit to appropriate water shall include, among other things, the time within which water system construction will be completed "and the time for the complete application of the water to the proposed use." (Emphasis added.) RCW 90.03.290 provides that a water right permit shall be issued if the Department finds that "there is water available for appropriation for a beneficial use, and the appropriation thereof as proposed in the application will not impair existing rights or be detrimental to the public welfare[.]" If these requirements are satisfied, the Department "shall issue a permit stating the amount of water to which the applicant shall be entitled and the beneficial use or uses to which it may be applied...." Id.
RCW 90.03.320 provides that when a permit is issued, actual construction work on a project for which the permit has been granted shall commence within a reasonable time as prescribed by the Department, be carried out with diligence, and be "completed within the time prescribed by the department." In fixing the time for commencement or completion of the work and the "application of the water to the beneficial use prescribed in the permit" the Department is to consider several criteria, including the cost and magnitude of the project and engineering and physical features involved. Id. (Emphasis added). The Department must consider the public welfare and public interests affected. For good cause shown, the Department may extend the time, allowing such additional time as "may be reasonably necessary, having due regard to the good faith of the applicant and the public interests affected." Id. A 1997 amendment to the statute provides additional criteria if the water is to be applied to beneficial use for municipal water supply purposes, including financing considerations and requirements of the growth management act, RCW 36.70A, and other planning statutes. Laws of 1997, ch. 445, § 3.
RCW 90.03.330 provides that upon a satisfactory showing that "any appropriation has been perfected in accordance with the provisions of this chapter, it shall be the duty of the department" to issue a water right certificate. The applicant's priority date for a water right will then relate back to the date *1246 of application for the permit. RCW 90.03.340; Hillis v. Department of Ecology, 131 Wash.2d 373, 384-85, 932 P.2d 139 (1997).
Read together, the statutes contemplate, in addition to construction of a water system, that an applicant will estimate the time needed to actually apply appropriated water to beneficial use, the Department will establish a time period in which water shall actually be applied to beneficial use, extensions of time will be available depending upon the circumstances, and a final certificate of water right will be issued upon a showing that the appropriation has been perfected. The surface water provisions which require application of water to beneficial use effectuate legislative policy expressly stated in both the surface and groundwater codes. See RCW 90.03.010; 90.44.020; 90.44.040.
Case law is in accord with the statutory requirement that a water right must be based on actual application of water to beneficial use and not upon system capacity. "An appropriated water right is established and maintained by the purposeful application of a given quantity of water to a beneficial use upon the land." Grimes, 121 Wash.2d at 468, 852 P.2d 1044 (emphasis added) (quoting Neubert, 117 Wash.2d at 237, 814 P.2d 199). Perfection of an appropriative right requires that appropriation is complete only when the water is actually applied to a beneficial use. See, e.g., Ellis v. Pomeroy Improvement Co., 1 Wash. 572, 21 P. 27 (1889); United States v. Alpine Land & Reservoir Co., 983 F.2d 1487, 1492-93 (9th Cir.1992) (Nevada law; perfection of water right requires water be put to actual beneficial use); see generally Arval A. Morris, Washington Water Rights A Sketch, 31 Wash. L.Rev. 243, 252, 258-59 (1956); 2 Waters and Water Rights § 14.03(d) (Robert E. Beck ed., 1991).
In requiring actual application of water to beneficial use in order to perfect an appropriative right before a final certificate of water right may be issued, the statutes codify fundamental western water law.
Appellant argues, however, that RCW 90.44.080 requires only completion of construction in accordance with the pumps and pipes language in his original permit. RCW 90.44.080 states that "[u]pon a showing to the department that construction has been completed in compliance with the terms of any permit issued under the provisions of this chapter, it shall be the duty of the department to issue to the permitee a certificate of groundwater right stating that the appropriation has been perfected under such permit." RCW 90.44.080. The statute requires (1) completion of construction of the water system (2) in compliance with the terms of permit and (3) perfection of the appropriative right. The flaw in Appellant's argument is that the terms of the permit must be consistent with the requirements of the surface water code specifically made applicable under the groundwater code. Clearly, permit terms which are unlawful under the surface water code cannot be used to force issuance of a final certificate of groundwater right under RCW 90.44.080. Because both compliance with a permit (containing terms lawful under the statutes) and perfection of the appropriation are required under RCW 90.44.080, we reject Appellant's contention that all the statute requires is completion of construction. In other words, while construction must be complete, it must be under terms which are consistent with the surface water code provisions specifically mentioned in the groundwater code, and perfection of the appropriative right must occur.
Neither the statutes nor the case law supports use of system capacity as a basis for determining a water right. Indeed, we recently held that system capacity as a basis for determining a water right is inconsistent with the beneficial use requirements, and beneficial use must be calculated based upon diversion and actual use under this state's law. Acquavella, 131 Wash.2d at 756, 935 P.2d 595.
Appellant attempts to distinguish Acquavella, arguing that Acquavella defines beneficial use based on the needs of irrigation systems and that its definition does not control where public water systems are concerned. This court has not drawn the distinction between what constitutes beneficial use for water for irrigation and water for other purposes which Appellant urges, and *1247 we will not do so here. A vested water right is perpetual, operating to the exclusion of subsequent claimants. Grimes, 121 Wash.2d at 467, 852 P.2d 1044. The requirement of beneficial use of water addresses concerns about the availability of water resources given ever increasing demands. Id. at 468, 852 P.2d 1044. Competing need for water exists whether vested water rights are held by irrigators or public water systems.
Nor do the statutes draw the distinction which Appellant urges. The statutes address appropriation of water for irrigation purposes in the same way as they address appropriation for other proposed uses. E.g., RCW 90.03.260; 90.03.320. Therefore, "beneficial use" and "perfection" have the same meaning regardless whether a private residential development or an irrigation use is involved.
We are also not persuaded by Appellant's claim that a distinction is warranted because his is a public water supply system. Initially, we note that Appellant is a private developer and his development is finite. Appellant is not a municipality, and we decline to address issues concerning municipal water suppliers in the context of this case. We do note that the statutory scheme allows for differences between municipal and other water use. E.g., RCW 90.03.260; 90.14.140(2)(d). We also note that 1997 legislation which would have allowed for a system capacity measure of a water right "[f]or those public water supplies that fulfill municipal water supply purposes," Substitute Senate Bill 5783, 55th Leg., Reg. Sess. § 4(2) (1997), was vetoed by the Governor on the ground that the provision, along with another vetoed section, would have provided an unfair advantage to public water systems by creating great uncertainty in determining water availability for other water rights and new applicants, as well as uncertainty in the protection of instream resources, and would have increased the difficulty of managing the state's waters. In determining legislative intent of a statute, the reviewing court considers the intent of the Governor when he vetoes a section. State ex rel. Royal v. Board of Yakima County Comm'rs, 123 Wash.2d 451, 462, 869 P.2d 56 (1994); In re Marriage of Maples, 78 Wash.App. 696, 702, 899 P.2d 1 (1995). Plainly, the Governor's veto message is strong evidence of intent that system capacity is not the measure of a water right under current statutes.
Finally, there is another reason to reject Appellant's contention that system capacity determines the measure and limit of a water right. Water rights may be relinquished. RCW 90.14.130-.180. The failure "to beneficially use all or any part" of the right for five years, without sufficient cause, "shall relinquish" the right in whole or in part. RCW 90.14.160; 90.14.170; 90.14.180. If system capacity defined the quantity of the right, i.e., system capacity equated to beneficial use as a measure and limit of the right, these statutory provisions would be meaningless. For example, if only one lot of 250 in a development having a completed water supply system ever actually used water, relinquishment could never be found of any part of the water right because system capacity would not change no matter how long water was not actually used with respect to the other 249 lots. We will not construe the statutory scheme in a way which renders these provisions of the relinquishment statutes meaningless. See Whatcom County v. City of Bellingham, 128 Wash.2d 537, 546, 909 P.2d 1303 (1996).
Additional concerns presented by Appellant's position are that using system capacity as a measure of a water right would allow speculation in water rights and lead to uncertainty in management of this fixed resource at a time when availability of water is a significant concern and management of limited water resources is of utmost importance.
We are mindful of the concerns expressed by Appellant and amici curiae that developers will find financing for water systems impossible to acquire if system capacity is not used to determine a vested water right, and this will have an adverse effect on development and availability of affordable housing. Nevertheless, under the current statutes and this court's recent water law decisions actual beneficial use must occur before a water right certificate may be issued. No authority is cited to us for the proposition that financial risks and ability to obtain financing justify *1248 redefining beneficial use. Whether financing concerns should be taken into account in determining beneficial use is a matter for the Legislature.
We do note that Appellant has been granted an extension of time in which to perfect his water right. He has at present an inchoate right to water which has not yet been applied to a beneficial use. An inchoate right is
an incomplete appropriative right in good standing. It comes into being as the first step provided by law for acquiring an appropriative right is taken. It remains in good standing so long as the requirements of law are being fulfilled. And it matures into an appropriative right on completion of the last step provided by law.
1 Wells A. Hutchins, Water Rights Laws in the Nineteen Western States 226 (1971). Inchoate rights are recognized under the water code. RCW 90.03.460 provides:
Nothing in this chapter contained shall operate to effect an impairment of any inchoate right to divert and use water while the application of the water in question to a beneficial use is being prosecuted with reasonable diligence, having due regard to the circumstances surrounding the enterprise, including the magnitude of the project for putting the water to a beneficial use and the market for the resulting water right for irrigation or power or other beneficial use, in the locality in question.
There is no issue at this point about whether Appellant has acted with reasonable diligence. If, in the future, Appellant decides to seek another extension of time, the Department will then be required to apply the appropriate statutory standards when deciding whether an extension should be granted, keeping in mind, of course, the statutory requirement that a reasonable time be allowed in which to actually apply water to beneficial use. See RCW 90.03.320.
The foregoing discussion resolves the Department's cross-appeal. Nevertheless, we must comment on the superior court's erroneous expansion of the definition of beneficial use. That court indicated in one of its conclusions of law that beneficial use as a measure and limit of a water right may be defined in part, but not in whole, by the capacity of a public water system's completed delivery system, to the extent the water will be beneficially used for a normal increase in population within a reasonable time. Contrary to the court's conclusion, vested water right for Appellant's development will depend upon the actual application of water to beneficial use, and a final certificate of water right cannot be issued to Appellant for a quantity of water not actually put to beneficial use.
Next, we turn to the Department's claim that regardless of what was provided in the original permit and Report of Examination, it has discretion to condition an extension of that permit to say that a water right certificate will ultimately be issued only to the extent water has actually been put to beneficial use, thus eliminating system capacity as a measure of the right. The Department's argument has merit. The decision to issue a permit is a discretionary act. Schuh v. Department of Ecology, 100 Wash.2d 180, 186, 667 P.2d 64 (1983). Upon a showing of good cause, the time fixed for completion of a project for which a water permit has been granted shall be extended. RCW 90.03.320. Generally, an agency which has authority to issue or deny permits has authority to condition them. E.g., State v. Crown Zellerbach Corp., 92 Wash.2d 894, 899, 602 P.2d 1172 (1979). The conditions of the original permit do not necessarily create a vested right to proceed under those conditions where renewal is discretionary if, for example, the law changes in the interim or the renewal decision involves consideration of information not considered when granting the original permit. Eastlake Community Council v. Roanoke Assoc., Inc., 82 Wash.2d 475, 491-93, 513 P.2d 36, 76 A.L.R.3d 360 (1973) (involving issue of vested rights in building permit).
When the Department determines whether to extend the period of time for completion of a project under RCW 90.03.320, it must consider the "good faith" of the appropriator and the public interests. The Department thus has authority to condition any extension to satisfy any public interest concerns which arise, provided, of course, *1249 that it also must comply with all relevant statutes. See Hardy v. Higginson, 123 Idaho 485, 849 P.2d 946 (1993) (inchoate right of water permittee to put water to beneficial use does not entitle permittee to vested right under original permit when application is made to amend the permit; the entire permit is subject to scrutiny under public interest considerations added to statutes after original permit issued). Here, the original permit would have required that a vested right be granted on a basis which is unlawful. The Department must be able to condition any extension to correct an unlawful permit. Cf. Acquavella, 131 Wash.2d at 756-57, 935 P.2d 595 (reasoning that consent decree allocation of water based upon a settlement agreement between parties could not be used to avoid statutory requirements and create a right to water on any basis other than actual beneficial use). The Department validly conditioned Appellant's permit extension.
Appellant argues that the Department's change from a system capacity measure of a water right is arbitrary and capricious. Agency action is arbitrary and capricious where it is willful and unreasoning and taken without regard to the facts and circumstances. Hillis, 131 Wash.2d at 383, 932 P.2d 139. If there is room for two opinions, a court will not find arbitrary and capricious action even if the reviewing court believes the agency's decision wrong. Id. As counsel for Appellant conceded at oral argument, if the Department's action in abandoning a system capacity method of quantifying the water right was because using that method was ultra vires and unlawful, then it did not act arbitrarily and capriciously. We agree, and because we have determined that the Department acted ultra vires in utilizing an unlawful system capacity measure of a water right, we conclude the Department did not act arbitrarily and capriciously in switching to an actual application of water to beneficial use standard.[1]
Appellant next says that just as he could not collaterally attack the original Report of Examination containing the "pumps and pipes" language because he did not appeal it, the Department should be barred attacking it in this proceeding. The issue in this case concerns the condition which the Department imposed when granting the extension of time to Appellant. This issue has not previously been heard and determined. See Peterson v. Department of Ecology, 92 Wash.2d 306, 312, 596 P.2d 285 (1979). Accordingly, the Department is not collaterally estopped from conditioning extension of Appellant's permit to provide that a water right certificate will be based upon actual application of water to beneficial use.
Appellant contends that equitable estoppel requires the Department to continue using a system capacity measure of his water right. To establish equitable estoppel requires proof of (1) an admission, statement or act inconsistent with a claim later asserted; (2) reasonable reliance on that admission, statement, or act by the other party; and (3) injury to the relying party if the court permits the first party to contradict or repudiate the admission, statement or act. Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1, 124 Wash.2d 816, 831, 881 P.2d 986 (1994). Equitable estoppel against the government is not favored. Kramarevcky v. Department of Social & Health Serv., 122 Wash.2d 738, 743, 863 P.2d 535 (1993). Therefore, when the doctrine is asserted against the government, equitable estoppel must be necessary to prevent a manifest injustice, and the exercise of government functions must not be impaired as a result of estoppel. Id. Each element must be proved by clear, cogent, and convincing evidence. Id. at 744, 863 P.2d 535.
Although there are several responses to Appellant's argument, we rest our decision upon the principle that where the representations allegedly relied upon are matters of law, rather than fact, equitable estoppel will not be applied. See Concerned Land *1250 Owners of Union Hill v. King County, 64 Wash.App. 768, 778, 827 P.2d 1017 (1992) (citing Chemical Bank v. Washington Pub. Power Supply Sys., 102 Wash.2d 874, 905, 691 P.2d 524 (1984)). Whether the Department can issue Appellant a water right certificate on any basis other than actual beneficial use is an issue of law. Insofar as the Report of Examination stated a system capacity measure of a water right, it was a statement of law which was incorrect. Equitable estoppel does not require adherence to a systems capacity standard in this case.
Finally, Amicus Curiae Washington Association of Realtors and Building Industry Association of Washington and Amicus Curiae Washington Water Utilities Council contend that the Department failed to comply with the Administrative Procedure Act, RCW 34.05, because it did not engage in rulemaking when it changed its "policy" of issuing water right certificates based upon a systems capacity measure to issuing certificates only for the amount of water actually applied to beneficial use. As discussed above, under this state's water code and this court's decisions, a water right certificate may be issued only for the amount of water actually put to beneficial use. The condition which Appellant challenges reflects the statutory and decisional law. It is not an issue of agency "policy." Administrative rules or regulations cannot amend or change legislative enactments. Pannell v. Thompson, 91 Wash.2d 591, 601, 589 P.2d 1235 (1979). Rulemaking is not required.
We affirm the superior court decision, as modified.
DURHAM, C.J., and DOLLIVER, SMITH, GUY, ALEXANDER and TALMADGE, JJ., concur.
SANDERS, Justice, dissenting.
The majority correctly frames the question as whether a final certificate of water right may be issued based upon the capacity of a public water system under the "pumps and pipes" approach, but incorrectly says "no" based upon its interpretation of RCW 90.03.290, a statute which provides: "When an application ... has been filed ... it shall be [the Department of Ecology's] duty to ... determine to what beneficial use or uses it can be applied." In so holding the majority confuses "beneficial use" with "actual use" and ignores other statutory provisions which are indicative of a prospective, not current, use.
Ecology here followed the clear language of the statute by granting George Theodoratus a permit stating he would receive a vested water right certificate for 93 homes if he drilled wells and built a water delivery system for the 93 lots. This method of granting a water right according to the capacity of the water distribution system is known as the "pumps and pipes" approach. Ecology has followed this approach for at least 40 years. Clerk's Papers (CP) at 78 (Pollution Control Hearings Board Final Findings, Conclusions of Law and Order [hereinafter PCHB Final Findings], Finding No. VI (PCHB No. 94-218 dated 4/13/95)).
Theodoratus drilled the wells and installed a costly water delivery system to serve 93 lots. Pursuant to Ecology's permit, completion of the system entitled Theodoratus to a water right certificate. See CP at 82 (PCHB Final Findings, Finding No. XII) ("The `pumps and pipes' interpretation would presently vest Mr. Theodoratus with water for 93 homes on the lots which the water supply system is ready to serve.").
Ecology does not deny that it granted Theodoratus such a permit nor that pursuant to such permit Theodoratus should now have a vested water right for 93 lots. Instead, Ecology argues its long-standing practice of granting water rights certificates based on pumps and pipes, and its particular promise to Theodoratus in this case, was ultra vires, or entirely outside the bounds of the statute. And the majority of this court agrees.
Thus, the issue before us is whether Ecology could, pursuant to our statute, issue a water certificate based on the pumps and pipes approach. The majority asserts pumps and pipes has never been the law and Ecology's long-standing practice[1] was illegal *1251 from the start. In the process the majority compels an absurd result and destabilizes all certificates already issued under the pumps and pipes approach as well as impairs the future of residential development in Washington. Adding insult to error, the majority denies Theodoratus a certificate even though he justifiably relied on Ecology's directive by making a substantial investment of private funds.

Statutory Authority
In Washington, water rights are determined by statute. Chapter RCW 90.03 establishes general principles of the water code while chapter RCW 90.44 governs groundwater. Both chapters are applicable in this case because Theodoratus is seeking a certificate to withdraw groundwater.
Prior to the enactment of our comprehensive statutory scheme, water rights were obtained through actual prior use. But under our statute water rights are now "acquired only by appropriation for a beneficial use." RCW 90.03.010. Thus, the question is, how does a citizen make such an appropriation for a beneficial use?
Rather than looking to our statute where the answer lies, the majority looks to a line of prestatutory water adjudication cases which are in fact inapplicable to this statutory water certification case. Majority at 1245 (citing Neubert v. Yakima-Tieton Irrigation Dist., 117 Wash.2d 232, 814 P.2d 199 (1991); Department of Ecology v. Grimes, 121 Wash.2d 459, 852 P.2d 1044 (1993); and Department of Ecology v. Acquavella, 131 Wash.2d 746, 935 P.2d 595 (1997)). The majority gleans from these cases a rule whereby a water right may be obtained only through actual prior use. Those cases do indeed state such a rule; however, that rule does not apply in the current case because Theodoratus has established his right under the statute and not through preexisting use.
Water adjudication cases involve the problem of who has a right to how much water from a given source. See Acquavella, 131 Wash.2d at 754, 935 P.2d 595 ("A general adjudication is a special form of quiet title action to determine all existing rights to the use of water from a specific body of water.") (citing Grimes, 121 Wash.2d at 466, 852 P.2d 1044). In all three water adjudication cases referenced by the majority, a district full of historical water consumers, usually farmers, came to the court to determine, or adjudicate, the extent of one another's water rights. If each farmer had obtained a water right certificate from Ecology the cases would have been easily resolved as each user's right would have been simply determined according to their certificate. But those users lacked water certificates because they, or their predecessors-in-interest, obtained their own water rights by actual use before the enactment of our statute rather than by the new statutory procedure. For example, in Neubert, the uses in the irrigation district dated to 1895 (117 Wash.2d at 234, 814 P.2d 199) while the water use in Grimes dated to 1906 and earlier (121 Wash.2d at 469, 852 P.2d 1044). Because the water use predated our certification scheme the right could not be determined by certificate. Instead the water right had to be determined according to historic prior use.
Thus, where the water right arises prior to our certification scheme prior actual use is the guide. But for water rights arising after passage of our water certification act, the act itself, not prior actual use, must govern. The act makes this clear that "[s]ubject to existing rights all waters within the state ... shall be hereafter acquired only by appropriation for a beneficial use and in the manner provided and not otherwise." RCW 90.03.010 (emphasis added). The majority errs by treating the Theodoratus water right as if it predated enactment of our water right statutes. But it does not. The Theodoratus water right arose under the statutory scheme, and, accordingly, we must turn to our statutes to measure the extent of that right.
The water right certification statute provides water rights are vested through an application process which requires the user to appropriate water for a future beneficial use, not a prior actual one. This application *1252 process is prospective. RCW 90.03.010 provides:
Subject to existing rights all waters within the state belong to the public, and any right thereto, or to the use thereof, shall be hereafter acquired only by appropriation for a beneficial use and in the manner provided and not otherwise; and, as between appropriations, the first in time shall be the first in right.
While the statute does not define either "appropriation" or "beneficial use," the statutory context clearly provides these terms do not mean simply prior actual use or consumption, as the majority wrongly assumes.
The prospective nature of the process is apparent from an analysis of the several steps which must be followed before a final vested water right certificate will issue. The prospective user must file an application with the Department of Ecology for initial permission to begin the appropriation process. Ecology then issues a temporary permit to begin construction and/or diversion of the water while Ecology investigates. Finally, upon completion of construction, Ecology issues a water right certificate vesting a right to a certain volume of water to be used in the future.

Application
The first step occurs when the citizen files an application for a permit to begin the water appropriation process. RCW 90.44.050; 90.03.250. The applicant may ask permission to drill wells and construct a water delivery system. RCW 90.44.050 provides, "[N]o withdrawal of public ground waters of the state shall be begun, nor shall any well or other works for such withdrawal be constructed, unless an application to appropriate such waters has been made to the department and a permit has been granted by it...." (Emphasis added.) The initial application must specify the location of the wells and the intended future volume to be used. See RCW 90.44.060 ("[E]ach application to withdraw public ground water by means of a well or wells shall set forth the following additional information: ... (3) the location of the proposed well or wells or other works for the proposed withdrawal;... [and] (5) the amount of water proposed to be withdrawn, in gallons a minute and in acre feet a year, or millions of gallons a year.") (emphasis added). Obviously, the statute does not require any establishment of past actual use as the application by its nature is prospective. Indeed a prior actual use requirement would be absurd and unworkable in light of the statutory requirement that the application be filed at the outset before any water conveyance construction, much less consumption, begins.

Investigation & Permit
The next statutory step requires Ecology to investigate the application to ensure that there is sufficient unallocated water in the region. RCW 90.03.290. Here, Ecology investigated the permit and determined:
No other water right or other applicant for a water right is likely to be harmed by perfection of a water right using the "pumps and pipes" interpretation in this case. This stretch of the Skagit River has plenty of water, and the ground water along this stretch is also plentiful. There is no minimum flow set for this stretch of the Skagit. There is no fish run which would be endangered by this appropriation.
CP at 85 (PCHB Final Findings, Finding No. XVI).
Following the investigation Ecology grants a preliminary permit allowing the applicant to move forward with the appropriation. The statute again looks to future intended use, not past actual use. RCW 90.03.290 provides a permit "shall not be approved for more water than can be applied to beneficial use for the purposes named in the application." (emphasis added). Here, the purpose named in the Theodoratus application is use of water by some 93 homes all of which are to be linked to the extensive water distribution system built by Theodoratus. These homes are to be built in the future and their use of water will be in the future. Ecology therefore appropriately granted Theodoratus a permit which provides
The applicant is, pursuant to the Report of Examination which has been accepted by *1253 the applicant, hereby granted a permit to appropriate the following described public waters ... Two (2) wells ... Maximum acre-feet per year: 320.0 ... [for] Community Domestic Supply [for the Theodoratus parcel].
Ex. R-6 (Department of Ecology Permit No. GI-20763P) (emphasis added). Pursuant to this permit to appropriate Theodoratus drilled the specified wells and constructed a water delivery system.

Appropriation
The next step in the process requires the applicant to appropriate the requested amount of water in the manner specified in the permit. Appropriation may be done in a variety of ways under the statute, but must be done in accordance with the initial permit. Appropriation may be accomplished through actual consumption of the water. It may also be accomplished by storing water for future use without actually consuming it. See RCW 90.03.345 ("The establishment of reservations of water for agriculture, hydroelectric energy, municipal, industrial, and other beneficial uses ... shall constitute appropriations within the meaning of this chapter."). See also RCW 90.44.055 (impoundment). A third method of appropriation, and the one relevant in groundwater cases, including the present one, is through construction of wells and a water delivery system. RCW 90.03.250 quite clearly provides, "The construction of any ditch, canal or works, or performing any work in connection with said construction or appropriation, or the use of any waters, shall not be an appropriation of such water nor an act for the purpose of appropriating water unless a permit to make said appropriation has first been granted by the department." And it makes perfect sense in the groundwater context that perfection occurs when wells are drilled and a water delivery system is constructed as such is the only method of tapping and appropriating groundwater. Thus, the statute allows Ecology to grant a permit to appropriate through construction of wells and a water delivery system. But the majority misses this statutory allowance.

Perfection
The third step in the statutory process is perfection. Perfection occurs when the "appropriation" envisioned in the permit is complete. Here, perfection occurs when the construction is complete. RCW 90.44.080, which governs perfection of groundwater permits, provides:
Upon a showing to the department that construction has been completed in compliance with the terms of any permit issued under the provisions of this chapter, it shall be the duty of the department to issue the permittee a certificate of ground water right stating that the appropriation has been perfected under such permit.
Thus, pursuant to the statutory text, perfection occurs when construction, as specified in the permit, is complete and not, as the majority declares, through actual use. Here the permit facially specified that Theodoratus shall appropriate by constructing a water delivery system. Accordingly, perfection occurred upon completion of Theodoratus' water delivery system. This is how the PCHB construed the statute. See CP at 82 (PCHB Final Findings, Finding No. XII) ("The `pumps and pipes' interpretation would presently vest Mr. Theodoratus with water for 93 homes on the lots which the water supply system is ready to serve."). And this is how Ecology interpreted the statute because the permit it issued stated a final certificate of water right would issue when "the permanent diversion facilities have been installed together with a mainline system capable of delivering the recommended quantity of water to an existing or proposed distribution system within the area to be served." Exhibit R-3. Ecology reiterated this same position on at least three subsequent occasions:
1. If, as the completion of construction form you submitted May 27, 1980, indicates the system is now serving at least one house, the system can be considered complete. Letter, Ecology to Mr. Theodoratus, dated June 4, 1980 (Exhibit R-9).
2. It would appear the best thing to do would be to issue your certificate for whatever quantity your pump now supplies (gpm) and the acre ft. will be based on the number of lots that your main lines supply. *1254 Letter, Ecology to Mr. Theodoratus, dated April 19, 1982 (Exhibit R-13)
3. The well, pump, mainlines to all lots, and with at least one hookup, must be installed, to go to final certificate. Letter, Ecology to Mr. Theodoratus, dated December 22, 1982 (Exhibit R-15).
CP at 80-81 (PCHB Final Findings, Finding No. IX).
But the majority defeats the simple statutory language by somehow concluding perfection occurs not upon completion of construction but rather upon actual prior use. This is impossible since there can be no use prior to construction of the delivery system. Plugging the majority's spin into the perfection statute, the landowner could necessarily vest nothing because at the moment when "construction has been completed," there is no actual use at all. At the moment construction is complete the house has not been built, nor sold, nor has the family which some day may buy the house used the faucet, flushed the toilet, or watered the lawn. Accordingly, no new development could be vested with any right to water.
Adding further confusion the majority approves Ecology's revised position that Theodoratus will have a water right vested in the 28 homes which have been constructed rather than the 93 lots for which the water system has been constructed. But allowing a water right to vest for completed construction (not actual use) violates the majority's own rule that only prior actual use will define a water right. Empty houses use no more water than empty lots. Further, assuming the majority were to attempt to reconcile its own inconsistencies by asserting that construction of 28 homes is a "beneficial use," how then does it justify its conclusion that construction of a water delivery system for 93 lots is not? The majority's definitions and approach are internally inconsistent, giving way to scrutiny, while yielding an absurd result.
Allowing a water right to vest upon completion of the water delivery system, as our statute does, allows a developer to build the often costly and complex system with assurance such will guarantee him a water right. Without such a guarantee no developer in his right mind would invest.[2] Moreover, under the majority's reading it is not clear when, if ever, even the homeowner will be entitled to a certificate. The majority asserts actual use is the talisman yet the statute says a certificate shall issue upon completion of construction. Actual use upon completion of construction is zero, thus entitling the owner to nothing. No rational person would buy a home with no prior guarantee of water. The PCHB recognized the same. See CP at 82-83 (PCHB Final Findings, Finding No. XII) (The pumps and pipes approach allows a developer to "assure prospective purchasers that a lot is sold with water. This underpins the saleability [sic] of the lot. That done, the developer can obtain financing to build the water supply system. The building of homes is then likely to follow.").[3] As a leading case noted when allowing the water right to be measured according to the capacity of the system, "`[c]ourts are not to shut their eyes to the realities of business life.'" City & County of Denver v. Sheriff, 105 Colo. 193, 96 P.2d 836, 841 (1939) (quoting Barkin Constr. Co. v. Goodman, 221 N.Y. 156, 116 N.E. 770, 771 (1917)). But the majority does exactly that. The majority's rule will defeat planned development. Such approach not only contravenes the language of the statute *1255 but defeats the statute's stated purpose to "support[] economically feasible ... development of physical facilities." RCW 90.03.005.
The fear underlying the majority's odd rule may be that allowing developers to vest a water right in the capacity of their water delivery system may forever tie up needed water. However, such concern ignores our relinquishment statute which allows relinquishment for non-use. RCW 90.14.
In sum, the majority ignores our statute in favor of a line of inapplicable water adjudication cases. However, if the majority looked to our statute, as it should, it must agree pumps and pipes is not only a valid approach to establishing a water right in groundwater, but probably the only approach which truly makes sense in the context of residential or municipal development.

Western Water Law
The majority goes further and asserts that not only is the pumps and pipes approach contrary to Washington's statutory scheme but is also alien to western water law in general. Not so.
While the answer to our inquiry today lies in our statute and not in "western water law," I note that even under western water law prior actual use has never been the single talismanic method for determining a water right. Instead authorities agree such determination is more general and is based on the facts of each case:
There must be an intent to appropriate manifested by a physical act.... Today, intent is generally manifested by filing an application for a water license ... The courts require some definite commitment to a project such as a district's approval of a project followed by a physical manifestation of intent. "[W]hat constitutes the element of intent and physical act is not the same in every case, and therefore, each case must, and should be considered on an ad hoc basis."[[4]]
A. Dan Tarlock, Law of Water Rights and Resources § 5.14[1], at 5-73 & 74 (1996) (footnote omitted) (alteration in original) (quoting Colorado River Water Conservation Dist. v. Rocky Mountain Power Co., 174 Colo. 309, 486 P.2d 438, 442 (1971), cert. denied, 405 U.S. 996, 92 S.Ct. 1245, 31 L.Ed.2d 465 (1972)). Here Theodoratus appropriated water by first applying for a permit and then constructing a costly water distribution system as specified in the permit.
Under general principles of western water law intended future use of water, and not just actual past use, may establish one's water rights. 1 Wells A. Hutchins, Water Rights Laws in the Nineteen Western States 377-78 (1971) ("From early times, courts have recognized the principle that the right to the use of water for irrigation is not necessarily confined to the quantity actually applied at the time the appropriation is made."); State ex rel. State Eng'r v. Crider, 78 N.M. 312, 315, 431 P.2d 45 (1967) ("The right to appropriate water for future use is fully recognized by most authorities.").
Future intended use is a recognized method of perfection under both the progressive growth doctrine and the growing communities doctrine. Both doctrines come into play here.

Progressive Growth Doctrine
Western water law recognizes that future intended use, rather than past actual use, may be the applicable measurement in those cases where a landowner has a tract of land of a definite size and knows he will require water for the entire tract but is still in the process of bringing the parcel into development. Such is known as the gradual or progressive growth doctrine. This doctrine contemplates the landowner will develop the land upon assurances in the meantime that he will have water available once the development is complete. In such case he will have *1256 a guaranteed water right in the future intended use. The New Mexico high court recently explained:
[W]hile in mining a fixed amount [of water] may usually be sufficient from the start for all purposes, in irrigation of newly settled land it will not. The need for water grows as the area cultivated grows. The settler can cultivate, perhaps, only a few acres the first year; but he does everything with a view to later expansion. As is said in one case, it is reasonable to suppose that reclamation of the entire area owned at the time of diversion is contemplated. Before his larger acreage is cleared and planted, however (which may take several years), other claimants to the use of the water have arrived. Does the law allow the former to continue increasing his use in the face of these later claimants?
"It seems well settled that such is the rule. The amount used need not be fixed, constant quantity...."
State ex rel. State Eng'r v. Crider, 78 N.M. 312, 315, 431 P.2d 45, 48 (1967) (quoting 1 Samuel Charles Wiel, Water Rights in the Western States § 483 (3d ed.1911)).
The Montana Supreme Court similarly held
It is not requisite that the water appropriated be made immediately to the full extent of the needs of the appropriator. It may be prospective and contemplated, provided there is a present ownership or possessory right to the lands upon which it is to be applied, coupled with a bona fide intention to use the water, and provided that the appropriator proceeds with due diligence to apply the water to his needs.
St. Onge v. Blakely, 76 Mont. 1, 23, 245 P. 532 (1926). See also 1 Wells A. Hutchins, Water Rights Laws in the Nineteen Western States 377-79 (1971) (describing doctrine of "gradual or progressive development" whereby one's water right "is not necessarily confined to the quantity actually applied at the time the appropriation is made" but rather may include intended future growth). While most cases recognizing this approach have been agricultural ones, the approach is not limited thereto. See Wiel § 483, at 513.
Where the progressive growth doctrine applies the landowner must physically manifest his intent to make the future appropriation. One obvious and acceptable method of doing so is to construct a water distribution system sufficient to service the entire tract: the pumps and pipes approach. As the Ninth Circuit explained, when this doctrine applies,
if the water is used for the purpose of irrigating lands owned by the appropriator, the right is not confined to the amount of water used at the time the appropriation is made. He would be entitled, not only to his needs and necessities at that time, but to such other and further amount of water, within the capacity of his ditch, as would be required for the future improvement and extended cultivation of his lands....
Hewitt v. Story, 64 F. 510, 514 (9th Cir.1894) (emphasis added).
We, too, have recognized the vitality of this doctrine. For example, in In re Water Rights in Alpowa Creek, 129 Wash. 9, 13-15, 224 P. 29 (1924) the landowner owned 340 acres and installed an irrigation system to irrigate the entire tract even though he initially cultivated only 12 acres. This court allowed a water right for irrigation of the full 340 acres held by landowner. The court noted "[a]n appropriation of water consists of an intention to appropriate followed by a reasonable diligence in applying the water to a beneficial use.... The law does not require an immediate use." Id. at 13-15, 224 P. 29 (citations omitted). See also In re Waters of Doan Creek, 125 Wash. 14, 25, 215 P. 343 (1923) (applying gradual growth doctrine); Thorp v. McBride, 75 Wash. 466, 469-70, 135 P. 228 (1913) (acknowledging gradual growth doctrine but refusing to apply it because the alleged growth is "too remote, speculative, and fanciful"). Not surprisingly the doctrine is consistent with the wording of our statute which, as discussed above, allows an appropriation to be perfected by construction of a water delivery system.
Indeed, the facts of the present case provide an ideal situation in which to apply the gradual growth doctrine. Like the farmers in the cases cited above, Theodoratus owns a precise amount of land which he intends to bring into use, although by necessity the raw *1257 land is first partitioned by platting, and then served by utilities (including water) before houses may be constructed. As in the cases cited above, it is reasonable to judge Theodoratus' water right, not by any past actual use, but rather by the amount of his intended future use as measured by the costly system of wells and pipes he has constructed. The capacity of his system is the modern day equivalent to the "capacity of his ditch." Hewitt, 64 F. at 514. However, the majority again disregards the relevant authority.

Growing Communities Doctrine
The majority further overlooks a second doctrine which also speaks to the facts of this case. Under the "growing communities doctrine" a community may perfect a water right in the amount of water it reasonably anticipates it will need to ensure water for future growth. Often the best indicator of the community's future intended water need is the capacity of the water distribution system it has constructed. As the PCHB concluded this doctrine fully applies to the case before us.
The leading case applying the growing communities doctrine is City & County of Denver, 105 Colo. 193, 96 P.2d 836. There Denver built an expensive water pipeline system allowing it to bring water to the city from the opposite side of the continental divide. The system's capacity was considerably greater than Denver's then-current water needs. The unused excess was intended for future growth. The issue was whether Denver could perfect its water right by reference to its water system's capacity or whether it was limited to prior actual use. The Colorado high court held that where a complex water system has been built to accommodate future needs of a community, the water right may be based on the flow capacity of the system's pumps and pipes rather than on the present or past actual water use. Id. at 841.
The theory of growing communities doctrine "reflects a concept of constructive beneficial use because it includes an amount of probable future municipal use, as well as actual use." Janis E. Carpenter, Symposium on Northwest Water Law: Water for Growing Communities: Refining Tradition in the Pacific Northwest, 27 Envtl. L. 127, 136 (1997) [hereinafter J.E. Carpenter, Symposium on Northwest Water Law]. See also Brian Faller, Special Treatment of Municipal Water Suppliers Under Washington Water Law [hereinafter B. Faller, Special Treatment of Municipal Water Suppliers Under Washington Water Law] in Third Annual Sinking Creek Water Law Symposium 1-9 (Wash. Law Sch. Found., 1996) ("DOE adopted what I refer in the section to follow as the concept of constructive beneficial use, to allow municipalities to certificate water that had not actually been put to beneficial use.").[5]
The growing communities doctrine is recognized throughout the western states. See State ex rel. Reynolds v. Rio Rancho Estates, Inc., 95 N.M. 560, 624 P.2d 502, 506 (1981) ("When determining the extent of a municipal water right, it is appropriate for the court to look to a city's planned future use of water from the well caused by an increasing population."); Reynolds v. City of Roswell, 99 N.M. 84, 654 P.2d 537, 540 (1982) ("When determining the extent of a municipal water right, and the validity of any conditions attached thereto by the State Engineer, it is appropriate for the Court to look to a city's planned future use of water."); City & County of Denver v. Northern Colo. Water Conservancy Dist., 130 Colo. 375, 276 P.2d 992, 997 (1954) ("when appropriations are sought by a growing city, regard should be given to its reasonably anticipated requirements.") (citing Van Tassel Real Estate & Live Stock Co. v. City of Cheyenne, 49 Wyo. 333, 54 P.2d 906 (1936)); City & County of Denver, 105 Colo. 193, 96 P.2d 836; 1 Wells A. Hutchins, Water Rights Laws in the Nineteen Western States 246-49 (1971) (discussing the growing communities doctrine); J.E. Carpenter, Symposium on Northwest Water Law, supra (same).
This doctrine is reflected in Washington's current statutory scheme. See, e.g., RCW *1258 90.03.260 (permit applications for "municipal water supply, [] shall give the present population to be served, and near as may be, the future requirement of the municipality."); RCW 90.14.140(2)(d) (currently unused water right held by communities not subject to relinquishment).
The growing communities doctrine serves important functions. It allows communities to secure a source of water to meet growing needs. It also allows a community to construct a properly scaled water system at the start rather than constantly expanding the system on a piece-meal basis to meet growing population. The realities of business life and common sense come into play as well. The pumps and pipes method "serves important purposes: it allows municipalities to rationally plan and provide for future requirements." B. Faller, Special Treatment of Municipal Water Suppliers under Washington Water Law at 1-14.
As commentators explain,
As a practical reality, it is impossible for a municipality simply to tack on infrastructure and water rights year by year as its needs grow. Instead, municipalities typically plan one or two decades ahead, or more. The infrastructure required to serve a city cannot gradually be sized up. Pipes, treatment facilities and other components must be sized at the time of design to meet growing needs over time. Likewise, in order to carry out its responsibility to its citizens, the city must acquire water rights of sufficient size to meet those growing demands. Waiting until the last minute to acquire water rights for a growing community would be the height of irresponsibility.
J.E. Carpenter, Symposium on Northwest Water Law at 137 (citing a 1995 brief filed in the Snake River Basin Adjudication (SRBA) on behalf of Boise's water supplier (Br. on Municipal Water Right Issues at 6-7), In re SRBA, 128 Idaho 155, 911 P.2d 748 (1995) (No. 39,576)). See also Frank J. Trelease, Preferences to the Use of Water, 27 Rocky Mtn. L.Rev. 133, 139 (1954) ("A city without some excess water or promise of water cannot grow, and typically municipal supplies are procured in large amounts that exceed present needs and permit expansion.").
The growing communities doctrine speaks to this case. While the Theodoratus development is not a municipality, the principle is the same and the doctrine is equally applicable to private developments. See, e.g., State ex rel. Reynolds v. Rio Rancho Estates, Inc., 95 N.M. 560, 624 P.2d 502, 506 (1981) (applying growing communities doctrine to private development). Further, this water system is in fact a "public water system," RCW 70.116.030(3). The Theodoratus development is a community of its own, particularly from the perspective of water supply as it has its own self-contained public water system. Theodoratus anticipates his developing community has a growing need for water as each new family home is constructed. Accordingly, he constructed a large infrastructure project bringing water to 93 lots. He did so under Ecology's direction and pursuant to Ecology's promise that doing so would vest a water right. We must enforce this promise not only for his benefit, but for the good of society.
Under the plain language of our statute Theodoratus' construction of this costly water distribution system provides a sufficient basis for a water right certificate. The water certificate should issue.
JOHNSON, J., concurs.
NOTES
[1] Appellant claims that he has been singled out for unfair treatment. In acting to correct its previously unlawful method of determining the measure and extent of a vested water right, the Department necessarily had to begin somewhere. Since Appellant requested an extension of time, it is not unreasonable for the Department to impose conditions on the extension which were necessary to bring the permit into compliance with the law.
[1] See City of Pasco v. Public Employment Relations Comm'n, 119 Wash.2d 504, 507, 833 P.2d 381 (1992) (court should give deference to long-standing agency interpretation).
[2] See Brian Faller, Special Treatment of Municipal Water Suppliers Under Washington Water Law [hereinafter B. Faller, Special Treatment of Municipal Water Suppliers Under Washington Water Law] in Third Annual Sinking Creek Water Law Symposium 1-14 (Wash. Law Sch. Found., 1996) [hereinafter Symposium] (The pumps and pipes method "provides a level of security to investors that tends to make financing more readily available at a lower cost.").
[3] See Thomas M. Pors, Recent Developments Regarding Municipal Water Rights 2 in Symposium:

For decades Ecology and its predecessor agencies issued water rights certificates to public water systems based on the `pumps and pipes' interpretation, that a vested water right based upon beneficial use occurs when pipes and pumps are in place to satisfy the needs of a normal increase in population. Whether for publicly or privately owned water systems, purchasers of lots must be assured of water availability, which underpins the salability of the lot and the water system's ability to finance the water system's ability to finance the water system improvements.
[4] Cf. Basin Elec. Power Coop. v. Board of Control, 578 P.2d 557, 568 (Wyo.1978) ("The determination of beneficial usein such proceedingsis, after all, a question of fact which depends on the circumstances of each case.") (citing City & County of Denver v. Sheriff, 105 Colo. 193, 96 P.2d 836, 842 (1939)); Three Bells Ranch Assocs. v. Cache La Poudre Water Users Ass'n, 758 P.2d 164, 173 (Colo.1988) ("Whether a use is beneficial is a question of fact and depends on the circumstances of each case.").
[5] See also B. Faller, Special Treatment of Municipal Water Suppliers Under Washington Water Law at 1-11 (under the pumps and pipes approach "the annual quantity is based on a projection of the highest annual use assuming the development is fully built.").