[No. 7288–6–III.   Division Three.   September 23, 1986.]

SHEEP MOUNTAIN CATTLE COMPANY, *Appellant,* v. THE DEPARTMENT OF ECOLOGY, *Respondent.*

*Kelly Hancock* and *Hancock, Rawson & Sloan, Inc.,* for appellant.

*Kenneth O. Eikenberry, Attorney General, Charles B. Roe, Jr., Senior Assistant,* and *Allen T. Miller, Jr., Assistant,* for respondent.

GREEN, C.J.—The Department of Ecology (DOE) issued an order declaring Sheep Mountain Cattle Company's right to use public waters pursuant to a certificate had reverted to the State. The Pollution Control Hearings Board (PCHB) and the Superior Court affirmed DOE's order. Sheep Mountain appeals claiming its due process rights were violated because it was deprived of its water rights without notice and opportunity to be heard. We agree and reverse.

Sheep Mountain owns a ranch in Okanogan County, along with appurtenant ground and surface water rights. Certificate 3 of the Sinlahekin Creek Adjudication was issued for this land to the Spokane and Eastern Trust Company on January 19, 1932, with a priority date of 1884, and confirmed a right to divert 2.26 cubic feet of water per second from Toats Coulee Creek for the purpose of irrigating 108.5 acres. Sheep Mountain acquired the land in 1974 from John Woodard, a successor in interest to Spokane and Eastern Trust Company. In 1966 John Woodard, then owner of the land, ceased the diversion and irrigated the acreage from a well. He did not use waters authorized under certificate 3 from that time until he sold the property to Sheep Mountain in 1974; Sheep Mountain has not used

the water from 1974 through the present. When Sheep Mountain was contemplating the purchase in 1974, Earl McConnell, the director and principal stockholder for Sheep Mountain, investigated the water rights by making inquiries of the realtor, owner, and Federal Land Bank officials. He also made inquiry to DOE. DOE advised him by telephone that "class 1 rights showed on the record, but the area's water rights were very intertwined and a personal visit to the Department to examine the entire record would be advisable." No other information was given him by DOE. Earl McConnell was satisfied with the telephone inquiry and his conversation with Woodard and others about the subject and did not visit the DOE to examine the records.

After its purchase of the land, Sheep Mountain began making plans to utilize the water rights. In November 1979 Mr. McConnell apprised the Whitestone Reclamation District Board of a proposal to irrigate some land with the water authorized by certificate 3. Sheep Mountain proposed building a dam and changing the point of diversion and place of use, but never filed an application with DOE to do so. Sheep Mountain also discussed various proposals with other public agencies.

On May 21, 1981, without a hearing or prior notice, DOE after entering findings of fact concluded "that the right to use public waters as embodied in Certificate No. 3 of the Sinlahekin Creek Adjudication has reverted to the state as provided by RCW 90.14.160" and ordered that "Certificate No. 3 is declared relinquished." This order was affirmed by the PCHB and the trial court. This appeal followed.

Sheep Mountain contends it was deprived of its water rights without notice and opportunity to be heard in violation of its due process rights and the decisions of the trial court and PCHB should be reversed. We agree.

RCW 90.14.130,[1] enacted in 1967, provides that

---

[1] RCW 90.14.130 (which was enacted by Laws of 1967, ch. 233, § 13, effective July 1, 1967) provides:

when the supervisor of water resources believes a person has not beneficially used his water rights, he must notify the person to show cause at a hearing before the supervisor why his rights should not be declared relinquished. Proceedings held pursuant to RCW 90.14.130 are "contested cases". RCW 90.14.200. In 1970, the Legislature established the Pollution Control Hearings Board "to provide for a more expeditious and efficient disposition of *appeals* with respect to the decisions and orders of the department and director . . ." (Italics ours.) RCW 43.21B.010. RCW 43.21B.120 specifically prohibits DOE from conducting hearings "on the issuance, modification, or *termination* of any permit or license . . ." (Italics ours.) RCW 43.21B.120. *See also ITT Rayonier Inc. v. Hill*, 78 Wn.2d 700, 709–10, 478 P.2d 729 (1970). What has happened is with the enactment of RCW 43.21B, the Legislature prohibited DOE from conducting any hearings, thus repealing *sub silentio* the show cause procedure previously provided for in RCW 90.14.130. Since PCHB was only given the power to hear *appeals* from DOE's orders, the Legislature failed to provide any due process prior to a termination order by DOE. Here, Sheep Mountain's water rights were terminated by DOE without notice or hearing. We conclude that portion of RCW 43.21B.120 which prohibits DOE from conducting hearings as to the issuance, modification or termination of any permit or license is unconstitutional.

■■ Property owners have a vested interest in their

---

"When it appears to the supervisor of water resources that a person entitled to the use of water has not beneficially used his water right . . . *the supervisor shall notify such person to show cause at a hearing before the supervisor* why his right or portion thereof should not be declared relinquished . . . The notice shall contain, (1) the time and place of the hearing as determined by the supervisor, (2) a description of the water right, . . . and (3) a statement that unless sufficient cause be shown the water right will be declared relinquished. Said notice shall be served by registered or certified mail and be posted at least sixty days before the hearing and sent to the last known address of said person. The supervisor shall, as soon as practicable after such hearing, make an order determining whether such water right has been relinquished and give notice to said person of the contents thereof in the same manner as in the notice procedure provided for in this section." (Italics ours.)

water rights, *Department of Ecology v. Adsit,* 103 Wn.2d 698, 705, 694 P.2d 1065 (1985); *Department of Ecology v. Acquavella,* 100 Wn.2d 651, 655, 674 P.2d 160 (1983), and these rights are entitled to due process protection. *Department of Ecology v. Acquavella, supra* at 656. It is well established that *prior to* an action affecting an interest in life, liberty or property protected by the due process clause, notice must be given which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 94 L. Ed. 865, 70 S. Ct. 652 (1950); *Carlstrom v. State,* 103 Wn.2d 391, 694 P.2d 1 (1985); *Wenatchee Reclamation Dist. v. Mustell,* 102 Wn.2d 721, 725, 684 P.2d 1275 (1984); *Jensen v. Department of Ecology,* 102 Wn.2d 109, 118, 685 P.2d 1068 (1984); *In re Puget Sound Power & Light Co.,* 28 Wn. App. 615, 619, 625 P.2d 723 (1981). The order terminating Sheep Mountain's vested property right prior to notice and hearing does not comport with these principles.

DOE argues the relinquishment order issued by DOE's supervisor was not final. However, RCW 43.21B.120 provides in part: "Any order issued by the department [DOE] . . . shall become *final* unless, no later than thirty days after the date that the notice and order are served, the person aggrieved by the order appeals . . ." (Italics ours.) Also see RCW 90.14.200 which provides: "*Final* decisions of [DOE] in these proceedings are subject to review in accordance with chapter 43.21B RCW." (Italics ours.) RCW 43.21B is the enabling statute for the PCHB. Moreover, the language of the order here specifically terminates the water rights. Thus, DOE's order of relinquishment was final and since no notice or hearing was provided to Sheep Mountain prior to issuance of the order, it was entered in violation of Sheep Mountain's constitutional right to due process and must be set aside.

DOE's actions, here, were particularly grievous because DOE in its finding 4 stated: "No facts exist to support an

exemption from the application of the relinquishment and revision provisions of RCW 90.14.160 as set forth in RCW 90.14.140." The unfairness of this finding is demonstrated by the following evidence submitted at the PCHB appeal hearing that Sheep Mountain (1) made inquiries to DOE, the realtor, owner and Federal Land Bank officials regarding the status of the certificate 3 water rights prior to purchasing the land; (2) apprised the Whitestone Reclamation District Board of a proposal for irrigating the property; (3) proposed building a dam and changing the point of diversion and place of use of the certificate 3 water; (4) investigated the cost of laying pipeline and laid some steel pipe on a portion of the land for irrigation purposes; and (5) discussed various proposals for the use of the certificate 3 water with other public agencies. This evidence supports the exemption of determined future development under RCW 90.14.140.

In light of our holding, Sheep Mountain is entitled to its attorney fees both at trial and on appeal. RCW 90.14.190.

Reversed and remanded for a determination of reasonable attorney fees and for a hearing before the Department of Ecology.

MUNSON and McINTURFF, JJ., concur.

Reconsideration denied November 10, 1986.

Review denied by Supreme Court March 4, 1987.