[No. 42998-1-I.   Division One.   October 11, 1999.]

HENRY K. DYKSTRA, ET AL., *Appellants*, v. SKAGIT COUNTY, *Respondent*.

*Wilmar Henson Williamson* and *Stuart W. Carson*, for appellants.

*Thomas L. Verge, Prosecuting Attorney*, and *Paul Hewson Reilly, Deputy*, for respondent.

ELLINGTON, J. — Appellants are co-trustees of a testamentary division of property in Skagit County. The property devised constituted 15 acres, which was divided into seven lots. Appellants wish to develop these lots, but Skagit County denied their applications because the lots are located in an Agricultural District where the minimum lot size is 40 acres. Appellants claim they are entitled to develop substandard lots under express provisions of the subdivision and zoning codes, and that their substantive due process rights were violated because the County had previously granted exemptions to other owners of substandard lots. These code provisions do not permit development, however, and prior inconsistent or erroneous enforcement does not confer rights upon Appellants. We affirm.

## Facts

A codicil to the will of Jeannette Dykstra divided ap-

proximately 15 acres of land in rural Skagit County into seven lots, pursuant to RCW 58.17.040(3). Appellants, including Henry Dykstra, (Dykstras) are co-trustees. The will was admitted to probate on December 6, 1993, and an order of distribution was approved on April 11, 1994.

In mid-1994, Dykstras applied to the Skagit County Department of Planning and Community Development permit center for a review of soil evaluations and designs for on-site sewage disposal. By letter dated June 7, 1994, the Planning Department denied the permit applications because the parcels did not meet the County's agricultural zoning minimum of 40 acres. The County's letter directed Dykstras' attention to this court's decision in *Estate of Telfer v. Board of County Comm'rs*, 71 Wn. App. 833, 862 P.2d 637 (1993), and to a memorandum by Chief Civil Deputy Prosecuting Attorney John Moffat discussing the case.

In *Telfer*, real property was left by will to three sons of the deceased, who sought to subdivide the property without meeting the requirements for a short plat. San Juan County denied the application. This court reversed, holding that under RCW 58.17.040(3), the will itself need not divide the property into separate, discrete parcels, and the devisees were entitled to divide the property without complying with short plat requirements. *Telfer*, 71 Wn. App. at 836-37. In dicta, the court stated: "[W]e emphasize that our holding is not to be understood as intimating that the parcels resulting from the division are exempt from any other land use regulations." *Id.* at 837. The memorandum from the Skagit County deputy prosecutor emphasized this aspect of the opinion, concluding that if parcels created by testamentary devise are substandard, the County is free to deny development permits.

Dykstras appealed denial of the development permits. The Skagit County Hearing Examiner upheld the denial, and Dykstras appealed to superior court. On Skagit County's motion, all claims were dismissed on summary judgment in 1995 except the due process claim. No appeal was taken from that order. In 1998, Dykstras sought sum-

mary judgment on the substantive due process claim. The court denied Dykstras' motion, and instead granted summary judgment in favor of Skagit County. Dykstras now appeal the 1998 summary judgment ruling.

## Discussion

### A. Standard of Review

■ In reviewing a summary judgment order, an appellate court engages in the same inquiry as the trial court. *Friend v. Friend*, 92 Wn. App. 799, 802, 964 P.2d 1219 (1998). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

### B. Substantive Due Process, 42 U.S.C. § 1983[1]

Dykstras claim Skagit County acted arbitrarily and capriciously in refusing to issue permits for development on their substandard lots, permits to which Dykstras claim to be entitled as a matter of right. Dykstras also claim the County violated "substantive due process and fair warning" requirements, and "vested rights," by refusing to continue a previous practice of exempting testamentary lots from other requirements of the code.

■ Under 42 U.S.C. § 1983, "substantive due process is denied if a local jurisdiction makes a land use decision irrationally, arbitrarily, and capriciously, its decision utterly fails to serve a legitimate governmental purpose, or was tainted by improper motive." *Cox v. City of Lynnwood*, 72 Wn. App. 1, 9, 863 P.2d 578 (1993) (citing *Robinson v. City of Seattle*, 119 Wn.2d 34, 62, 830 P.2d 318 (1992)).

---

[1]42 U.S.C. § 1983 states in pertinent part:

Every person who, under color of any statute, ordinance, regulation . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

## C. Skagit County Code[2] and Development of Substandard Testamentary Lots

Dykstras' property is located within Skagit County's Agricultural District, which restricts development to lots of 40 acres or more.[3] Dykstras argue, however, that other provisions of Skagit County's subdivision and zoning codes expressly allow development of their seven substandard lots. Dykstras claim that because their substandard lots "comply" with two code sections, the County was required to issue the permits.

Dykstras point to Skagit County Code (SCC) 14.12.030(4), part of the subdivision code, which provides:

This chapter shall apply to the division of land into five (5) or more lots, tracts, parcels or sites for the purposes of sale, lease or development.

. . . .

The provisions of this chapter shall not apply to:

. . . .

(4) Divisions made by testamentary provisions, or the laws of descent[.]

As the plain language of this provision indicates, the subdivision ordinance does not apply to divisions of land made by testamentary devise. In this, it complies with RCW 58.17.040 and *Telfer.* Dykstras' lots are thus created by the will itself, not by compliance with the subdivision code.

Dykstras next look to the general provisions of the zoning code. SCC 14.04.190(5) provides:

When any person owns or acquires contiguous pieces of

---

[2]The Skagit County Code provisions have changed since Dykstras applied for their permits in 1994. In some instances, the Dykstras have cited the incorrect, amended version of the code. Our discussion will consider the provisions then in effect.

[3]SCC 14.04.110(5) provides: "Dimensional Requirements. (a) "Minimum lot size: 1/16 of a section of land or larger, or 40 acres (gross area) or larger if the land is not capable of description as a fraction of a section of land." This provision was repealed when the Comprehensive Plan was adopted.

property involving descriptions setting forth lots which would be substandard under the provisions of this chapter, the Planning Department and the Assessor shall combine such property in the following manner:

. . . .

(d) Exceptions: . . . Any lot divided by short plat or *other legal means* after March 1, 1965, need not be combined or aggregated.

(Emphasis added.) Dykstras correctly assert that their substandard lots need not be aggregated or combined because they were divided by "other legal means." From this premise, Dykstras argue that their substandard lots can be developed under another general provision of the zoning code, SCC 14.04.190(11), which states: "Not more than one (1) dwelling unit shall be allowed on any lot, except by *legal means* as provided in this Ordinance." (Emphasis added.) Dykstras argue that since their lots are created by "other legal means" as that term is used in the aggregation section, they may develop one residential unit per lot regardless of the lot size.

Dykstras' interpretation conflates several unrelated sections of the code. A plain reading of SCC 14.04.190(11) reveals it creates a simple limitation: not more than one dwelling is allowed on any lot, unless some exception applies. (No such exception has been identified here.) The ordinance does not grant a right to develop at least one dwelling unit on every lot. Similarly inapplicable is the aggregation section, which makes no reference to development rights and does not exempt Dykstras from other applicable land use regulations. Its likely purpose is to limit the life-span of nonconforming lots "grandfathered" under previous regulations by providing that in the event adjacent lands come under the same ownership, the lots are aggregated for development purposes. This purpose is the exact contrary of the interpretation proposed by Dykstras.

Dykstras urge us to read these sections in isolation from

other provisions, particularly those associated with the agricultural zone requirements. Essentially, Dykstras have extracted from the zoning code all references to "legal lots" or lots created by "other legal means." It is apparent, however, that no development rights are conferred by any of these sections.

Dykstras' lots are legally created, but are nonconforming substandard lots. Because the lots do not meet the most basic of Agricultural District requirements (i.e., 40-acre minimum size), development rights do not follow. Further, as discussed in the Hearing Examiner's decision, in an Agricultural District, residential use is accessory to the principal use, not an outright permitted use.[4] Dykstras intend to use the lots for residential purposes, a use which is not permitted except in conjunction with agricultural uses as their property is now zoned. This further demonstrates the importance of considering the zoning code in its entirety.

In their reply brief, Dykstras raise yet another argument for allowing development of substandard testamentary lots. They ask this court to consider the code definitions of "legal lot of record" and "lot certification process." We decline to consider these issues, raised for first time in the reply brief, because there was no opportunity for the opposing party to respond. RAP 10.3(c). In any event, nothing in the definitions enhances Dykstras' arguments here.[5]

In sum, the various isolated code sections relied upon by Dykstras do not expressly (or impliedly) allow development of Dykstras' substandard lots. There was nothing irrational or arbitrary in the County's denial of development permits.

---

[4]*See* SCC 14.04.110(2)-(3). SCC 4.04.030(2)(a) defines accessory use as "incidental and subordinate to the primary use and located on the same lot as the primary use." SCC 14.04.030(68) defines permitted use as: "Any use authorized or permitted alone or in conjunction with another use in a specified zone and subject to the limitations of the regulations of such zone."

[5]As in other arguments, Dykstras ignore the effective date of these code provisions. Their applications were made in 1994. These provisions are from the 1997 code amendments.

## D. Past Exemptions

Dykstras also contend that Skagit County's denial of their permits violated their substantive due process rights because the County had previously granted exemptions to other owners of substandard lots.

■ ■ The County does not deny it exempted substandard testamentary lots created before the *Telfer* decision, but asserts it was in effect engaging in an ultra vires act. "Ultra vires acts are those done wholly without legal authorization or in direct violation of existing statutes." *Department of Labor & Indus. v. Kantor*, 94 Wn. App. 764, 778-79, 973 P.2d 30 (1999) (citations omitted).

Governmental entities are not precluded from enforcing ordinances even though they may have been improperly enforced in the past. As the court stated in *City of Mercer Island v. Steinmann*, 9 Wn. App. 479, 483, 513 P.2d 80 (1973):

> The governmental zoning power may not be forfeited by the action of local officers in disregard of the statute and the ordinance. The public has an interest in zoning that cannot thus be set at naught. The plaintiff landowner is presumed to have known of the invalidity of the exception and to have acted at his peril.

(quoting *Zahodiakin Eng'g Corp. v. Zoning Bd. of Adjustment*, 8 N.J. 386, 396, 86 A.2d 127 (1952)). In *Buechel v. Department of Ecology*, the Supreme Court cited *Mercer Island* with approval, stating: "The proper action on a land use decision cannot be foreclosed because of a possible past error in another case involving different property." *Buechel*, 125 Wn.2d 196, 211, 884 P.2d 910 (1994) (holding that Board's denial of permit and variance, despite its previous grant of permit in similar situation, was not arbitrary and capricious). More recently, the Supreme Court applied this rationale in the context of water rights. *See Department of Ecology v. Theodoratus*, 135 Wn.2d 582, 957 P.2d 1241 (1998) (where Department originally acted ultra vires in measuring a water right, Department did not act arbitrarily and capriciously in abandoning unlawful practice and switching to new practice).

Skagit County granted permits for testamentary lots created before the decision in *In re Estate of Telfer*, 71 Wn. App. 833, 862 P.2d 637 (1993), and denied permits to those created afterwards. Dykstras argue that the County should have legislated the new policy rather than simply implement its attorney's reading of *Telfer*. But new legislation is not necessary for enforcement of existing code provisions. The statement in *Telfer* that caused the change in the County's practice may be cautionary dicta, but it is accurate:

> [W]e hold that the estate is entitled to divide the property into no more than three discrete parcels without meeting the requirements for a short plat. Although the issue is not directly presented, and was not argued, we emphasize that our holding is not to be understood as intimating that the parcels resulting from the division are exempt from any other land use regulations.

*Telfer*, 71 Wn. App. at 837.

Sound policy supports the *Telfer* court's caution. While the legislature in RCW 58.17.040(3) gave effect to testamentary devise of real property without the burdens of the short plat process, it gave no indication whatsoever that an exemption from local short plat requirements carried with it other unstated exemptions from land use regulations generally.

As noted by the *Telfer* court, there may be no prejudice to local land use policies in allowing the creation of new parcels without satisfaction of short plat requirements.[6] But if testamentary devise of nonstandard parcels creates automatic development rights, without regard to the provisions of the local land use code, then nothing whatsoever will exist to preserve lot size requirements or use restrictions in any area. Fundamental principles of land use

---

[6]*See Telfer*, 71 Wn. App. at 835 ("No persuasive reason is advanced why the Legislature would choose to let a person do by will what he cannot do while living, or would permit heirs to do what the decedent could not have done in his lifetime. On the other hand, the County in its brief did not identify any adverse impact on its land use policies and at oral argument was unable to do so.").

regulation would be easily subverted. Nothing in the statute suggests the legislature intended to exempt lots created by testamentary devise from the other land use regulations of the County, and we decline to so hold.

We agree with the County that Planning Department officials had been engaged in an informal, illegal act, which they corrected after the *Telfer* opinion was published. No new legislation was necessary to effect the change in enforcement practices, only an understanding of the correct interpretation of the existing code. Dykstras cannot claim any vested right because they did not apply for development permits until several months after Skagit County had aligned its enforcement practices to comply with its code. *See Friends of the Law v. King County*, 123 Wn.2d 518, 522, 869 P.2d 1056 (1994). To the extent Dykstras' argument is in the nature of an estoppel claim, it fails for the same reason. *See Buechel*, 125 Wn.2d at 211. The trial court correctly denied Dykstras' due process claims.

Affirmed.

KENNEDY, C.J., and WEBSTER, J., concur.

Review denied at 140 Wn.2d 1016 (2000).