[No. 22580-1-III. Division Three. April 19, 2005.]

MOTLEY-MOTLEY, INC., *Respondent*, v. THE POLLUTION CONTROL HEARINGS BOARD ET AL., *Appellants*.

*Robert M. McKenna, Attorney General,* and *Alan M. Reichman* and *Martha P. Lantz, Assistants,* for appellants.

*Charles A. Kimbrough*; and *Philip A. Talmadge* (of *Talmadge Law Group, P.L.L.C.*), for respondent.

*Kristopher I. Tefft* on behalf of Association of Washington Business, amicus curiae.

¶1 Kurtz, J. — This case concerns relinquishment of a right to divert surface water from the Palouse River. In 1996, after receiving information that the water right had not been used since the early 1970s, the Department of Ecology (DOE) issued an order initiating proceedings to relinquish the water right. The Pollution Control Hearings Board (PCHB) issued a final order affirming DOE's tentative order that the water right to the property had been relinquished because it had not been used for a five-year period.

¶2 Motley-Motley, Inc. (Motley), had purchased the land and its pertinent water right shortly before DOE commenced the relinquishment proceedings. Motley appealed the decision of PCHB to the superior court. On review, the superior court determined that PCHB did not have authority to decide the issue of equitable estoppel. The superior court allowed Motley to introduce new evidence. Based upon the new evidence, the superior court reversed.

¶3 On appeal, PCHB and DOE assert that the superior court's order should be reversed because the trial court erred in ruling that: (1) PCHB lacked authority to hear and decide an equitable estoppel defense to the relinquishment of the water right; (2) Motley could present additional evidence on appeal to challenge the decision of PCHB that Motley's water right was relinquished for nonuse; (3) the decision of PCHB relinquishing Motley's water right was not supported by substantial evidence in the record; (4) DOE's investigation was arbitrary, capricious, irrational, and fundamentally unfair and, therefore, denied Motley's substantive due process rights; (5) the water rights relinquishment statute, RCW 90.14.130, violates procedural due process; (6) DOE's order of relinquishment violates Motley's

right to procedural due process; and (7) Motley was entitled to attorney fees and expenses.

¶4 We hold the superior court erred in ruling that PCHB lacked authority to hear and decide Motley's equitable estoppel defense to the relinquishment of its surface water right. Consequently, the court erred in allowing Motley to raise its equitable estoppel claim for the first time before the superior court. Motley was required to present its equitable estoppel claim to PCHB. As to the remaining assignments of error, we reverse the superior court. In summary, we reverse the orders of the superior court and affirm the order of PCHB.

## FACTS

¶5 L.C. Staley applied for a surface water right to withdraw water from the Palouse River to irrigate 50 acres of pastureland in Whitman County. Mr. Staley received surface water certificate No. 5672 from the water commission, DOE's predecessor, on April 5, 1954. Thereafter, the property was sold to Ray Smith. Mr. Smith irrigated the property regularly during the 1960s until the early 1970s. In the early 1970s, Mr. Smith changed the nature of his operation and the property was not irrigated from the early 1970s through 1985.

¶6 In 1985, the Farm Home Administration (FHA) filed a lawsuit to foreclose its mortgage on the property. In September 1985, Mr. Smith was evicted from the property. For a number of years thereafter, FHA and Mr. Smith were involved in various legal proceedings concerning the property.

¶7 FHA put the property up for auction in 1995. On March 28, 1995, LeRoy Debes, a supervisor for the United States Department of Agriculture, wrote to Bruce Howard, DOE's section manager for water resourcing, requesting that DOE not relinquish the water right under surface water right certificate No. 5672. Mr. Debes further requested that DOE make a favorable determination on

nonuse and affirm the validity of the water right. DOE did not respond to Mr. Debes's correspondence.

¶8 That same month, FHA advertised the property for sale at auction. The pre-auction advertising specifically stated that the property came with a valid water right. At auction, however, the bidders were informed that the water right was not guaranteed.

¶9 Motley was the successful bidder at the auction. Later, Motley contacted DOE concerning the water right. DOE stated that they would not pursue relinquishment of the water right for the time period during which the property was owned by FHA. DOE stated, however, that it would require evidence to establish beneficial use of the water right prior to 1985.

¶10 Thereafter, Motley finalized its purchase of the property. At that time, Motley contacted DOE concerning the water right. In response to Motley's request that DOE confirm the validity of the water right, DOE indicated that it needed proof regarding beneficial use of the water right prior to 1985. Despite DOE's noncommittal response to its request, Motley improved the irrigation system.

¶11 Several interested citizens contacted DOE concerning the water use on the property. They asserted that the property had not been irrigated since the early 1970s. In conducting its investigation, DOE interviewed neighbors, reviewed aerial photographs, and contacted Motley. It did not, however, contact Mr. Smith, the former owner. Based upon its investigation, DOE determined that the water use had ceased in the early 1970s. DOE issued a tentative order that determined that the water right had reverted to the state of Washington because the right had not been put to beneficial use since the early 1970s. Motley received notice of the order and it was informed that it had the opportunity to appeal the order to PCHB. Because the order was not final, Motley maintained its water right, pending the final determination by PCHB. At a hearing before PCHB, both DOE and Motley called witnesses and presented evidence.

¶12 Howard Morris and Bob Hamill were witnesses for DOE and provided the following testimony:

- They knew Mr. Smith.
- They lived in the area between 1970 and 1985.
- They traveled past the property at least twice a month between the late 1960s and mid-1980s.
- They could see the property's irrigation system from the highway.
- They saw Mr. Smith regularly irrigating the property prior to 1970.
- They confirmed that Mr. Smith ceased irrigating the property in the early 1970s.

¶13 Environmental expert Bruce Howard testified for DOE. He identified aerial photographs of the property from the years 1966, 1972, 1976, 1979, and 1991. According to Mr. Howard, the 1966 aerial photograph shows that the property had been irrigated. By contrast, the 1972 through 1991 aerial photographs showed that the property was not being irrigated.

¶14 Geologist Jim Lyerla testified regarding a 1980 aerial photograph of the property. According to Mr. Lyerla, the 1980 aerial photograph also established that the property had not been irrigated in recent years.

¶15 Corporate officer Gerald Motley testified for Motley. He identified an aerial photograph taken of the property in 1996. According to Mr. Motley, the 1996 aerial photograph showed that irrigation patterns cannot always be determined based upon aerial photography. He conceded, however, that he did not know whether the property was irrigated during the disputed period.

¶16 Joleen Child, an employee of Inland Power and Light Co., testified for Motley. Inland Power supplies electrical power to the property. According to Ms. Child, Inland Power's records indicated that there was active electrical service to the property until 1985. Significantly, she stated that the power company's records did not show whether

power was supplied to the water pumps or how much power was used.

¶17 In its final order, PCHB found that the water right had reverted to the state of Washington because the water right had not been used on the property for more than five years.

¶18 Motley petitioned the superior court for review of the PCHB decision. On appeal, the superior court determined that PCHB did not have the authority to hear equitable defenses, such as equitable estoppel. Accordingly, the superior court authorized a separate superior court action to hear Motley's equitable estoppel claim. During the trial of that action, the court allowed new evidence to be admitted concerning equitable estoppel, procedural due process, and preservation of use during the disputed period. Based upon the new evidence, the superior court reversed the decision of PCHB. The superior court awarded attorney fees and expenses to Motley.

## ANALYSIS

¶19 On appeal, the superior court reversed the decision of PCHB that Motley's water right was relinquished by nonuse. DOE and PCHB assign a number of errors to the rulings of the superior court, but their principal issue is whether PCHB has the authority to adjudicate an equitable estoppel defense to a proceeding over relinquishment of a water right. They contend PCHB had such authority and they further contend the superior court erred in allowing Motley to present its equitable estoppel defense in a separate superior court action.

¶20 *Standard of Review.* An appellate court can grant relief (1) where the agency's interpretation or application of the law is erroneous, (2) the order is not supported by substantial evidence, or (3) the order is arbitrary or capricious. *Postema v. Pollution Control Hearings Bd.*, 142 Wn.2d 68, 77, 11 P.3d 726 (2000) (citing RCW 34.05.570(3)). RCW 34.05.570(1)(a) provides that "[t]he burden of demon-

strating the invalidity of agency action is on the party asserting invalidity." Thus, in this case, Motley bears the burden of demonstrating the invalidity of PCHB's decision.

■ ■ ¶21 The Administrative Procedure Act (APA), chapter 34.05 RCW, governs judicial review of PCHB's decisions. *Dep't of Ecology v. Theodoratus*, 135 Wn.2d 582, 589, 957 P.2d 1241 (1998). The court applies the standards of RCW 34.05.570(3) directly to the agency's record. *Theodoratus*, 135 Wn.2d at 589. As a general rule, the findings of the trial court in an administrative review are superfluous unless the trial court took new evidence in accordance with the APA; in that instance, the appellate court does look to the trial court record because additional evidence was before the trial court. *Seattle Bldg. & Constr. Trades Council v. Apprenticeship & Training Council*, 129 Wn.2d 787, 799, 920 P.2d 581 (1996).

■ ■ ¶22 The standards for review of agency orders under the APA are set forth in RCW 34.05.570. The PCHB's findings of fact are reviewed under the substantial evidence standard. RCW 34.05.570(3)(e). This standard is highly deferential to the administrative fact finder. *King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 142 Wn.2d 543, 553, 14 P.3d 133 (2000). The same deference should be afforded to PCHB's factual findings as an appellate court would afford a superior court's findings. *Snohomish County v. Hinds*, 61 Wn. App. 371, 378-79, 810 P.2d 84 (1991). This court engages in de novo review of the agency's legal conclusions. *In re License of Farina*, 94 Wn. App. 441, 450, 972 P.2d 531 (1999).

■ ¶23 *New Issues.* In general, new issues may not be raised for the first time on appeal. RCW 34.05.554(1); *Bowers v. Pollution Control Hearings Bd.*, 103 Wn. App. 587, 597, 13 P.3d 1076 (2000). RCW 34.05.554 precludes appellate review of issues that were not raised before the agency. *Id.* Instead, a party aggrieved by a final decision of an administrative agency can seek judicial review of that decision only under the provisions of the APA. *Franklin*

*County Sheriff's Office v. Sellers*, 97 Wn.2d 317, 322, 646 P.2d 113 (1982).

¶24 Under the APA, new issues can be raised on appeal only if they fall expressly within the statutory exceptions of RCW 34.05.554. *US W. Communications, Inc. v. Utils. & Transp. Comm'n*, 134 Wn.2d 48, 72, 949 P.2d 1321 (1997). RCW 34.05.554 allows new issues during the review of an order if (1) the person did not know, and was under no duty to discover, facts giving rise to the issue or (2) the person was not notified of the administrative proceeding. The statute serves the important policy purpose of protecting the integrity of administrative decision making. *King County v. Wash. State Boundary Review Bd.*, 122 Wn.2d 648, 668, 860 P.2d 1024 (1993).

¶25 *Equitable Estoppel.* Motley argues that it could not raise its equitable estoppel claim before PCHB because PCHB lacked the authority to consider equitable defenses in adjudicating relinquishment of Motley's water right. In response, DOE and PCHB argue PCHB has implied authority to consider equitable defenses.

¶26 All cases in equity must be heard in the superior court because the Washington Constitution expressly grants exclusive jurisdiction over all cases in equity to the superior courts. *State v. Brennan*, 76 Wn. App. 347, 351-52, 884 P.2d 1343 (1994). By contrast, the Washington Constitution grants universal original jurisdiction to superior courts over cases at law. Consequently, the legislature can establish inferior courts that have concurrent original jurisdiction over cases at law. *Strenge v. Clarke*, 89 Wn.2d 23, 26-27, 569 P.2d 60 (1977).

¶27 Significantly, an equitable defense does not convert an action at law into an action in equity. *Watkins v. Siler Logging Co.*, 9 Wn.2d 703, 714, 116 P.2d 315 (1941) (quoting *Bain v. Wallace*, 167 Wash. 583, 587, 10 P.2d 226 (1932)). The action remains at law. *Id.* Equitable estoppel is available only as a shield, or defense; it is not available as a sword, or cause of action. *Chem. Bank v. Wash. Pub. Power Supply Sys.*, 102 Wn.2d 874, 902, 691 P.2d 524 (1984)

(quoting *Klinke v. Famous Recipe Fried Chicken, Inc.*, 94 Wn.2d 255, 258-59, 616 P.2d 644 (1980)). If there is any doubt about the character of the case, the action remains at law. *Bain*, 167 Wash. at 587.

¶28 Did PCHB have the implied authority to hear Motley's equitable defense? An agency may act only as it is authorized to act by the legislature. *Rettkowski v. Dep't of Ecology*, 122 Wn.2d 219, 226, 858 P.2d 232 (1993). And, the extent of the authorization depends upon the wording of the statute. *Campbell v. Dep't of Soc. & Health Servs.*, 150 Wn.2d 881, 894, 83 P.3d 999 (2004). Agencies may act if the action is either expressly authorized by the statute or impliedly authorized from the statutory delegation of authority. *In re Impoundment of Chevrolet Truck*, 148 Wn.2d 145, 156, 60 P.3d 53 (2002). An agency's implied authority is its power to do those things that are necessary in order to carry out the statutory delegation of authority. *Tuerk v. Dep't of Licensing*, 123 Wn.2d 120, 125, 864 P.2d 1382 (1994).

¶29 In the case of PCHB, the legislature created the agency in order to provide for a more expeditious and efficient disposition of DOE appeals. RCW 43.21B.110. To that end, the legislature granted PCHB the express authority to hear and decide appeals from DOE. RCW 43.21B.110. PCHB also has all of the powers granted to an agency for adjudicative proceedings under the APA. RCW 43.21B.160. From this statutory scheme, we conclude PCHB has the implied authority to do everything lawful and necessary to provide for the expeditious and efficient disposition of DOE appeals. This includes the right to develop and shape remedies within the scope of its statutory authority. *Mun. of Metro. Seattle v. Pub. Employment Relations Comm'n*, 118 Wn.2d 621, 634, 826 P.2d 158 (1992). Therefore, PCHB had the implied authority to hear Motley's equitable defense. *Kingery v. Dep't of Labor & Indus.*, 132 Wn.2d 162, 172-73, 937 P.2d 565 (1997).

¶30 Here, Motley's equitable estoppel claim against DOE was not a separate action in equity. Rather, it was an

equitable defense to DOE's action at law, a claim for relinquishment of Motley's water right. Accordingly, Motley's assertion of an equitable estoppel defense did not convert the proceeding before PCHB into an equitable action. Thus, PCHB had the implied authority to consider Motley's equitable estoppel claim, which Motley was required to present to PCHB. The superior court erred by ruling otherwise.

¶31 Moreover, Motley could not raise its equitable estoppel claim for the first time before the superior court. To fall within the statutory exception of RCW 34.05.554, Motley needed to show that it did not know, and was under no duty to discover, facts giving rise to its equitable estoppel claim. Before purchasing the property at the auction, Motley had some knowledge that there were issues regarding the property's water right. At the auction, FHA stated that it would not guarantee the property's water right. After Motley contacted DOE regarding the property's water right, Motley was informed that it would have to provide evidence that the water right had been preserved by use during the disputed period. Motley was informed of, and appeared at, the PCHB hearing. In summary, Motley did not satisfy the criteria set forth in RCW 34.05.554(1), was required to present its equitable estoppel claim to PCHB, and could not raise this new issue for the first time on appeal.

██ ██ ¶32 *Relinquishment.* Under relinquishment, "any water right holder who, for a period of five successive years, voluntarily fails, without sufficient cause, to use beneficially all or any part of the water right, will relinquish such right or a portion thereof." *Dep't of Ecology v. Acquavella*, 131 Wn.2d 746, 758, 935 P.2d 595 (1997) (citing RCW 90.14.160). DOE has the initial burden to prove the lack of beneficial use. At that point, the burden of proof shifts to the property owner to show that the nonuse falls within a narrow statutory exception. *Id.* Only if the nonuse falls within a narrow exception under RCW 90.14.140 will the nonuse be excusable. *Acquavella*, 131 Wn.2d at 758.

¶33 *New Evidence.* DOE asserts that the superior court did not have the authority under the APA to admit new evidence regarding relinquishment of Motley's water right. In response, Motley asserts the superior court properly admitted new evidence because PCHB did not have the authority to hear claims that it presented in its separate lawsuit.

¶34 Under the APA, judicial review is limited to the agency record. RCW 34.05.566(1); *Wash. Indep. Tel. Ass'n v. Utils. & Transp. Comm'n*, 110 Wn. App. 498, 518, 41 P.3d 1212 (2002), *aff'd*, 149 Wn.2d 17, 65 P.3d 319 (2003). Additional evidence is admissible "only if it relates to the validity of the agency action and is needed to decide disputed issues regarding improper agency action, unlawfulness of procedure, or material facts not required to be determined on the agency record." *Id.* If the admission of new evidence at the superior court level was not highly limited, the superior court would become a tribunal of original, rather than appellate, jurisdiction and the purpose behind the administrative hearing would be squandered. *Ault v. Wash. State Highway Comm'n*, 77 Wn.2d 376, 378, 462 P.2d 546 (1969) (quoting *Ins. Co. of N. Am. v. Kueckelhan*, 70 Wn.2d 822, 835, 425 P.2d 669 (1967)).

¶35 Under RCW 34.05.562(1), new evidence is admissible only under highly limited circumstances. For example, new evidence is admissible when no evidence was presented at the administrative hearing. *Purse Seine Vessel Owners Ass'n v. State*, 92 Wn. App. 381, 388, 966 P.2d 928 (1998). Or the agency record consists of one letter. *Children's Hosp. & Med. Ctr. v. Dep't of Health*, 95 Wn. App. 858, 863 n.9, 975 P.2d 567 (1999). Or when no administrative hearing occurred. *Seattle Bldg. & Constr. Trades Council v. Apprenticeship & Training Council*, 129 Wn.2d 787, 798-99, 920 P.2d 581 (1996). Generally, however, new evidence is inadmissible. When it is admissible, it is admissible because it falls squarely within the statutory exceptions listed in RCW 34.05.562(1).

¶36 In this case, we conclude the new evidence was inadmissible. There are multiple reasons for our conclusion. First, the superior court did not have the authority to admit new evidence under a theory of equitable estoppel. Second, there is no basis for the admission of new evidence under the APA. All of the new evidence that the trial court allowed Motley to submit concerning water use during the period from the late 1960s through the mid-1980s was available at the time of the PCHB hearing. This was not new evidence that Motley "did not know and was under no duty to discover or could not have reasonably been discovered until after the agency action." RCW 34.05.562(2)(b)(i). Third, allowing the new evidence essentially permitted Motley to retry its case. But Motley was obligated to present its case to PCHB and not to the superior court. In conclusion, we hold the superior court abused its discretion by admitting the new evidence.

¶37 *Substantial Evidence.* Motley believes PCHB's findings are not supported by substantial evidence. An agency's findings of fact are reviewed under a substantial evidence standard. *Hubbard v. Dep't of Ecology*, 86 Wn. App. 119, 123, 936 P.2d 27 (1997). " 'Substantial evidence is "evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premises".' " *Heinmiller v. Dep't of Health*, 127 Wn.2d 595, 607, 903 P.2d 433, 909 P.2d 1294 (1995) (quoting *Nghiem v. State*, 73 Wn. App. 405, 412, 869 P.2d 1086 (1994) (quoting *Olmstead v. Dep't of Health*, 61 Wn. App. 888, 893, 812 P.2d 527 (1991))).

¶38 In this case, PCHB found that the water right had not been used on the property for more than five years. PCHB's findings of fact are supported by substantial evidence. First, two neighbors testified for DOE that: (1) they passed the property at least once a month from 1970 until 1985, (2) the irrigation system on the property could be seen from the road, and (3) the property owner stopped irrigating in the early 1970s. Second, two experts testified for DOE that it was their professional belief that irrigation on the subject property stopped in the early 1970s. If believed

by the hearing officer, this constitutes substantial evidence to support the findings of fact. There is no evidence in this record to show that the nonuse falls within a statutory exception.

 ¶39 *Improper Investigation.* The superior court concluded that "DOE engaged in an unlawful procedure or failed to follow a prescribed procedure and DOE's failures substantially prejudiced Motley." Clerk's Papers (CP) at 623. In a similar vein, the court ruled that DOE's tentative relinquishment order was arbitrary and capricious. The court based its conclusion regarding unlawful procedure on its finding that DOE's investigator did not make a site visit to the property, contact Motley, view Motley's records, or examine aerial photographs before concluding that DOE could initiate a relinquishment action. Motley characterizes DOE's investigation as secret and incomplete. Motley complains that it never had the right to contest DOE's assumptions about relinquishment and its only remedy was an appeal to PCHB.

¶40 RCW 90.14.130 sets forth the procedure for relinquishment proceedings and provides, in relevant part:

> When it appears to the department of ecology that a person entitled to the use of water has not beneficially used his water right or some portion thereof, and it appears that said right has or may have reverted to the state because of such nonuse, . . . the department of ecology shall notify such person by order . . . .

The statute does not require DOE to use any particular process to investigate the possible relinquishment of a water right before issuing its order initiating the relinquishment process. The statute merely requires DOE to notify a person, by order, when it appears that a water right holder has not beneficially used their water. The statute also provides for the opportunity to request a hearing before PCHB before relinquishment can take effect. Significantly, Motley does not cite any statute or regulation for its contention that DOE violated its procedural requirements.

 ¶41 Moreover, even if DOE's investigation of Motley's water right was inadequate and incomplete, there was no actual prejudice to Motley. The relinquishment proceedings before PCHB were de novo, without deference to DOE's tentative decision. At the PCHB hearing, Motley had the right, opportunity, and obligation to present evidence rebutting DOE's proof of the alleged relinquishment of Motley's water right.

 ¶42 Arbitrary and capricious action is established by willful and unreasoning action, without consideration and in disregard of facts and circumstances. *Pierce County Sheriff v. Civil Serv. Comm'n*, 98 Wn.2d 690, 695, 658 P.2d 648 (1983) (quoting *State v. Rowe*, 93 Wn.2d 277, 284, 609 P.2d 1348 (1980)). It is not established where there is room for two opinions, even though one may believe that an erroneous conclusion has been reached. *Id.* Clearly erroneous action is established when an appellate court reviews the whole record and finds that although there is evidence to support the decision, the appellate court is left with the definite and firm conviction that a mistake has been committed. *Franklin County Sheriff's Office v. Sellers*, 97 Wn.2d 317, 324, 646 P.2d 113 (1982) (quoting *Ancheta v. Daly*, 77 Wn.2d 255, 259-60, 461 P.2d 531 (1969)).

¶43 In this case, our review is limited to the administrative record before PCHB. None of the factors identified in RCW 34.05.562(2) are met in this case. Likewise, our review is limited to PCHB's findings of fact and conclusions of law. The superior court's findings of fact and conclusions of law are superfluous.

 ¶44 Based upon our review of the administrative record before PCHB, we conclude its findings of fact are not arbitrary and capricious. Its decision does not constitute a " 'willful and unreasoning action, without consideration and in disregard of facts and circumstances.' " *Pierce County Sheriff*, 98 Wn.2d at 695 (quoting *Rowe*, 93 Wn.2d at 284). Rather, Motley introduced evidence at the PCHB hearing that tended to controvert the evidence offered by DOE. After hearing and considering the evidence offered by

all parties, PCHB decided in favor of DOE and against Motley. The existence of contrary evidence does not render its findings of fact arbitrary and capricious.

¶45 Similarly, PCHB's conclusions of law are not erroneous. Based upon its factual finding that the water right was not used for more than five years, PCHB concluded that the water right reverted to the state of Washington. We conclude PCHB applied its factual findings to the appropriate legal standard and correctly concluded that the water right had been relinquished to the State.

¶46 *Procedural Due Process.* The superior court concluded that "DOE's relinquishment order and/or the relinquishment statute itself violated Motley's constitutional right to procedural due process of law." CP at 623. In reaching this conclusion, the superior court reasoned that the administrative procedures followed in this case resulted in the identical constitutional defects that caused this court to invalidate an earlier version of the relinquishment statute in *Sheep Mountain Cattle Co. v. Department of Ecology*, 45 Wn. App. 427, 431, 726 P.2d 55 (1986).

¶47 In *Sheep Mountain*, we found a procedural due process violation because the earlier version of RCW 90.14.130 "failed to provide any due process prior to a termination order by DOE." *Sheep Mountain*, 45 Wn. App. at 430. In response to our decision, the legislature amended the statute. RCW 90.14.130 now provides that PCHB is to conduct a hearing concerning relinquishment before issuing a final order.[1] Under the current statutory scheme, DOE does not have the authority to make final determinations regarding relinquishment. *Pub. Util. Dist. No. 1 of Pend Oreille County v. Dep't of Ecology*, 146 Wn.2d 778, 794, 51 P.3d 744 (2002). DOE has the authority only to issue tentative orders. *Id.* The issuance of final orders is made by PCHB. *Id.* The relinquishment of Motley's water right did not become effective until PCHB held a hearing and then issued its findings, conclusions, and order. The trial court erroneously

---

[1] *See* LAWS OF 1987, ch. 109, § 13.

concluded that RCW 90.14.130 violated Motley's constitutional right to due process of law.

¶48 The superior court also ruled that DOE's relinquishment order violated Motley's procedural due process rights. Procedural due process requires notice and an opportunity to be heard prior to final agency action. *City of Redmond v. Arroyo-Murillo*, 149 Wn.2d 607, 612, 70 P.3d 947 (2003). An agency's tentative determination that a right has been revoked does not constitute final agency action. *Pub. Util. Dist.*, 146 Wn.2d at 793-94. Minor procedural errors comply with due process. *State v. Storhoff*, 133 Wn.2d 523, 527, 946 P.2d 783 (1997). To establish a procedural due process violation, the party must establish that he or she has been deprived of notice and opportunity to be heard prior to a final, not tentative, determination. *Id.* at 528.

¶49 An agency's failure to comply with its advisory interpretations of the law does not establish a procedural due process violation. *Wash. Educ. Ass'n v. Pub. Disclosure Comm'n*, 150 Wn.2d 612, 619, 80 P.3d 608 (2003). Similarly, an agency's failure to comply with its own procedures does not establish a procedural due process violation. *Pullman Power Prods., Inc. v. Marshall*, 655 F.2d 41, 44 (4th Cir. 1981). Instead, to constitute a violation, the party must be prejudiced. *Id.* Prejudice relates to the inability to prepare or present a defense. *Id.*

¶50 In this case, there was no procedural due process violation. First, DOE does not have the authority to issue a final order. For that reason, alleged violations of DOE's rules and procedures do not establish due process violations. Second, the failure to comply with internal procedures does not establish a procedural due process violation unless there is prejudice. Here, there is no prejudice because Motley was provided with notice and an opportunity to be heard. More specifically, Motley was provided with notice and the opportunity for a full evidentiary hearing before its water right was terminated.

 ¶51 *Substantive Due Process.* The superior court concluded that "DOE's conduct both before and after it issued the relinquishment order was arbitrary, capricious, irrational and fundamentally unfair and therefore denied Motley's substantive due process rights." CP at 623. A land use decision violates substantive due process only if the decision: (1) is irrational, arbitrary and capricious; (2) utterly fails to serve a legitimate governmental purpose; or (3) was tainted by improper motive. *Dykstra v. Skagit County*, 97 Wn. App. 670, 673, 985 P.2d 424 (1999) (quoting *Cox v. City of Lynnwood*, 72 Wn. App. 1, 9, 863 P.2d 578 (1993)). Essentially, the trial court concluded that because DOE did not properly investigate the allegations regarding relinquishment of Motley's water right, there was a substantive due process violation.

¶52 In this case, there was no substantive due process violation. PCHB ruled that Motley's right to divert surface water from the Palouse River had been relinquished because the water right had not been put to beneficial use for more than five years. As already noted, PCHB's decision was not irrational, arbitrary, and capricious. Also, its decision served a legitimate governmental purpose because it complied with the statutory mandate that a water right is relinquished if it is not used for five years. Finally, the record does not support a finding that PCHB's decision was tainted by an improper motive. In conclusion, we hold there is no substantive due process violation.

¶53 *Attorney Fees.* For the reasons stated in this opinion, the superior court erred by awarding attorney fees and expenses to Motley. Similarly, we deny its request for additional attorney fees on appeal.

¶54 In conclusion, we reverse the orders of the superior court and affirm the order of PCHB.

SCHULTHEIS and BROWN, JJ., concur.

Review denied at 156 Wn.2d 1004 (2006).