**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

**FILED**
**JANUARY 16, 2024**
In the Office of the Clerk of Court
WA State Court of Appeals Division III

COURT OF APPEALS, DIVISION III, STATE OF WASHINGTON

| | | |
|---|---|---|
| RAYMOND RESER, | ) | No. 39115-9-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | ORDER GRANTING MOTION |
| | ) | TO PUBLISH OPINION |
| POLLUTION CONTROL HEARINGS | ) | |
| BOARD, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| STATE OF WASHINGTON, DEPARTMENT | ) | |
| OF ECOLOGY. | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

THE COURT has considered the respondent's motion to publish the court's opinion of October 12, 2023, and the record and file herein, and is of the opinion the motion should be granted. Therefore,

IT IS ORDERED, the motion to publish is granted. The opinion filed by the court on October 12, 2023 shall be modified on page 1 to designate it is a published opinion and on page 19 by deletion of the following language:

> A majority of the panel has determined that this opinion will not be printed in the Washington Appellate Reports but it will be filed for public record pursuant to RCW 2.06.040.

PANEL: Judges Fearing, Lawrence-Berrey, Staab

FOR THE COURT:

_George Fearing_____
GEORGE B. FEARING, Chief Judge

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| RAYMOND RESER, | ) | |
| | ) | No. 39115-9-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| POLLUTION CONTROL HEARINGS | ) | UNPUBLISHED OPINION |
| BOARD, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| STATE OF WASHINGTON, | ) | |
| DEPARTMENT OF ECOLOGY. | ) | |
| | ) | |
| Respondents, | ) | |

FEARING, C.J. — We must decide whether the nonuse of water for fifteen years resulting from a tenant gaining possession of a farm and changing the crop grown on the land from irrigated asparagus to dryland wheat constitutes a "crop rotation," within the meaning of RCW 90.14.140(1)(k), so as to avert relinquishment of water rights. We conclude that answering this question in the affirmative, as argued by Appellant Raymond Reser, stretches the concept of crop rotation beyond its elasticity. We affirm the Pollution Control Hearing Board's (PCHB's) dismissal of Reser's appeal of the Department of Ecology's (DOE's) determination that the water rights on Reser's Ferguson Farm terminated because of lack of use for more than five years. We also

No. 39115-9-III,
*Reser v. Pollution Control Hearings Board, et al*

affirm the PCHB's determination that estoppel does not preclude DOE from asserting

relinquishment.

FACTS

This appeal concerns water rights attended to Ferguson Farm, 457.9 acres of

agriculture land in Walla Walla County. Raymond Reser currently owns Ferguson Farm.

The facts extend decades into the past and focus on water usage during the tenure of

various owners and tenants.

Previous owner Baker & Baker, a Washington corporation, acquired water rights

for Ferguson Farm. On November 28, 1949, the state issued Ground Water Certificate

378-A to reflect the existence of those rights.

On some unknown date, Richard Reynolds and Hellen Sparrow purchased

Ferguson Farm, and the pair farmed the land until 1981. Reynolds and Sparrow raised

irrigated asparagus. They relied on an artesian well situated on the property as the source

of water.

Beginning in 1981, Richard Reynolds and Hellen Sparrow rented, under a fifteen-

year lease, Ferguson Farm to K-Farms, Inc., a company owned by the Kimball family.

The lease agreement included a right of first refusal to match the terms of any proposed

purchase of Ferguson Farm.

K-Farms severed the asparagus plants and planted winter wheat every year during

its fifteen-year rental of Ferguson Farm. Winter wheat is a nonirrigated crop. Thus, K-

2

No. 39115-9-III,
*Reser v. Pollution Control Hearings Board, et al*

Farms never irrigated the farmland. Nor did K-Farms maintain the farm's irrigation system.

On February 3, 1995, Raymond Reser purchased Ferguson Farm from the D. Richard Reynolds Trust and Hellen Sparrow. K-Farms had declined to exercise its right of first refusal to purchase the farmland. Reser's acquisition of the land, however, remained subject to K-Farms' existing farm lease, under which the latter could farm Ferguson Farm for two additional seasons.

On March 17, 1995, Larry Siegel, attorney for Raymond Reser, wrote to Bill Neve, then DOE's Walla Walla office watermaster. Siegel's letter read:

> Dear Mr. Neve:
>
> I represent Ray Reser who recently purchased farm property located in Walla Walla County which has in place an artesian well. Mr. Reser wanted me to inquire as to whether or not there is a *recorded water right* on this property. I have enclosed with this letter a copy of the legal description of the property. Please let me know at your earliest convenience *if a water right exists*.

Clerk's Papers (CP) at 250 (emphasis added). On March 29, 1995, Watermaster Neve replied:

> Dear Mr. Siegel:
>
> Enclosed please find a copy of Certificate of Ground Water Right No. 378, together with a copy of the associated well log report. *This water right is appurtenant* to your client's property per the legal description you sent to my office on March 27.
> I did not find any other water rights appurtenant to the subject property.

3

No. 39115-9-III,
*Reser v. Pollution Control Hearings Board, et al*

CP at 141 (emphasis added).

Since the PCHB granted the DOE summary judgment, we view the facts in a glow

favorable to Raymond Reser. According to Reser, K-Farms did not view his purchase of

Ferguson Farm favorably and refused to provide him its chemical application history for

the land. Without access to this history, Reser lacked knowledge of the chemicals

previously applied to the land. His crop advisor alerted Reser to potential residual

chemical contamination of the soil and advised him not to raise any legumes or alfalfa.

Reser grew small grains, which did not require irrigation, on Ferguson Farm from 1997

through 2000.

Raymond Reser currently rotates the raising of soft white wheat, barley, garbanzo

beans, and peas on Ferguson Farm. The rotation reduces irrigation needs on the farm and

lessens the risk of disease.

Since acquiring the property, Raymond Reser has intermittently irrigated Ferguson

Farms with hand lines, wheel lines, and controlled flooding. Reser has not irrigated

Ferguson Farm every year due to weather conditions and the variety of crops rotated on

the land. He has maintained Ferguson Farm's irrigation system in a condition permitting

the access to water when necessary. Given the types of crops raised and the early date for

harvest of winter wheat, Reser believes one viewing Ferguson Farm from the roadside or

4

No. 39115-9-III,
*Reser v. Pollution Control Hearings Board, et al*

by plane might conclude, in July through October, that he applies no irrigation even though the opposite may be true.

Raymond Reser participated in a federal program that mandated reduced irrigation during December 2007 through December 2011 and another program during 2013 through 2019. The first program prohibited full-width tillage and required crop rotation, residue management, and a direct seeding system, all of which practices required Reser to reduce water use. To participate in the program, Reser replaced some mainline equipment and upgraded other irrigation equipment. Reser spent $80,000 to maintain Ferguson Farm's irrigation system under this first program.

Beginning by at least 2013, Eric Hartwig, then DOE's Walla Walla watermaster, twice visited Ferguson Farm each year as part of his normal job duties. Before 2017, Hartwig did not observe any water being applied to the fields.

In the summer of 2017, DOE agent Eric Hartwig observed a center pivot installed on Ferguson Farm and a new irrigation main line and flow meter. During that summer, Ferguson Farm neighbors registered disquietude, about the new irrigation system, to Watermaster Hartwig. Neighbor Todd Kimball filed an environmental report tracking system complaint. He later testified that, despite driving by Ferguson Farm occasionally, he never saw irrigation on the land until the installation of irrigation pivots in 2017. Kimball, a shareholder of the former tenant of Ferguson Farm, asserted a belief that the water right had been relinquished due to more than five years of nonuse.

5

No. 39115-9-III,
*Reser v. Pollution Control Hearings Board, et al*

In the Fall of 2017, DOE Watermaster Eric Hartwig initiated an investigation of water usage at Ferguson Farm to determine whether the water right on the land was not utilized for at least five consecutive years. Review of DOE's records and aerial photographs confirmed water nonuse under Ground Water Certificate No. 378-A from 1997 through 2016. On January 25, 2018 Watermaster Hartwig notified Raymond Reser that DOE had concluded Ferguson Farm had failed to employ water for beneficial use for more than five consecutive years before 2017. DOE granted Reser sixty days to submit evidence and explain why DOE should not relinquish the water right.

On March 26, 2018, Raymond Reser's attorney, James Browitt, responded to the DOE instruction to show cause to submit evidence. Browitt's response included an affidavit of water use signed by Raymond Reser, United States Farm Service Agency crop data, letters from three people familiar with Ferguson Farm, and photos of Ferguson Farm fields. DOE Watermaster Eric Hartwig reviewed the information supplied by Raymond Reser.

In October 2018, Gale Kimball, another shareholder of the former lessee K-Farms, forwarded a letter to DOE, in which Kimball averred that, from 1981 to 1996, K-Farms did not irrigate the land authorized for use under Ground Water Certificate 378-A during the fifteen years K-Farms leased the property. Thus, DOE's investigation expanded to years before Raymond Reser gained possession of Ferguson Farm. Gale Kimball added that, despite farming neighboring land, she never saw irrigation on Ferguson Farms until

6

No. 39115-9-III,
*Reser v. Pollution Control Hearings Board, et al*

2017.  On December 27, 2019 Fred Kimball and Alfred Kimball, both owners and officers of K-Farms, Inc., respectively submitted affidavits describing the nonuse of water occurring from 1981 to 1996.

By May 2020, DOE concluded that no water had been applied on Ferguson Farm and under Ground Water Certificate No. 378-A for a window of thirty-seven years from 1982 through 2016.  DOE also determined that no sufficient cause justified an exemption from relinquishment of the water right under Washington law.

On May 5, 2020, DOE issued an order entitled Involuntary Relinquishment of Ground Water Certificate No. 378-A.  The order outlined DOE's findings of fact resulting from its investigation into the use of the water rights on Ferguson Farm.  The order declared that Ground Water Right Certificate No. 378-A would be declared relinquished, unless within thirty days Reser appealed to the PCHB.

## PROCEDURE

Raymond Reser appealed to the PCHB.  His appeal argued that any nonuse of water on Ferguson Farms was excused because of the crop rotation relinquishment exception found in RCW 90.14.140(1)(k).  Reser also contended that Watermaster Bill Neve's March 29, 2015 letter works an estoppel to silence DOE from asserting any invalid water right.

7

No. 39115-9-III,
*Reser v. Pollution Control Hearings Board, et al*

DOE filed a motion for summary judgment. As part of his response to the motion, Raymond Reser filed a declaration from Dr. Robert Thornton, an expert on agricultural crop production. In his declaration, Thornton averred:

> 7. I have reviewed the water right relinquishment exemption under RCW 90.14.l40(k) in light of the historical crop production at the Ferguson Farm. Based upon my experience in the industry, *the temporary change in the type of crops grown at Ferguson Farm from 1981 constitute an exercise of generally recognized sound farming practices.*
> . . . .
> 9. *A crop rotation which includes non-irrigated wheat for an extended period of time constitutes a sound farming practice. It is good for the soil* as it increases organic matter. It is much better than fallow rotation (bare soil), which reduces the soil microbial soil populations over time.
> . . . .
> 11. *The decision to rotate between raising non-irrigated wheat vs. irrigated wheat, and whether it is a sound farming practice, is also a question of economics.* If the crop rotation works economically, it is a sound farming practice.
> 12. I consult with growers that commonly practice a rotation of irrigated crop every other year followed by an irrigated crop the next year.
> 13. *The Ferguson Farm's rotation from asparagus to dry land wheat, to a current rotation of wheat, garbanzos and peas constituted a reasonable crop rotation that does not deviate from sound farming practices.*
> 14. I have reviewed Mr. Reser's affidavit dated March 26, 2018, and in particular paragraph 11 addressing the small grain operation from 1997 to 2000. *Mr. Reser's rotation from continuous wheat to a small grain operation for a number of years is a sound farming practice given risk of crop loss, and lack of insurance coverage, due to possible residual chemical carryover.*

CP at 240-41 (emphasis added).

8

No. 39115-9-III,
*Reser v. Pollution Control Hearings Board, et al*

The PCHB granted DOE's summary judgment motion, thereby rejecting the argument that Ferguson Farm qualified for the crop rotation relinquishment exception. The PCHB's written decision read, in part:

> However, Dr. Thornton did not address the issue of how it could be a sound farming practice when the extended crops only rotated when farm ownership changed over decades, or how such decades long change to dryland wheat farming constitutes "temporary change" in the types of crops grown. There is nothing in the record to indicate K-Farms made any intentional decision to farm non-irrigated wheat for 15 years in order to benefit the soil, or that it was part of any long-term sound farming practice. Indeed, Dr. Thornton stated in his declaration that growers "commonly practice a rotation of [non-]irrigated crop every other year followed by an irrigated crop the next year," contradicting his opinion that a 15-year non-irrigated wheat crop constitutes a sound farming practice.
> . . . Even construing all evidence in favor of the non-moving party, it would be an overly broad interpretation of the crop rotation exemption to conclude that a 15-year crop, that was only rotated when the property changed ownership, constituted a "temporary change" in types of crop grown "resulting from the exercise of generally recognized sound farming practices." RCW 90.14.140(1)(k). *Thus, the Board concludes Reser has failed to meet his burden of proving the crop rotation exemption applies to excuse the 1981 to 1996 time period of non-use*.

CP at 371-72 (emphasis added) (footnote and citations omitted). The PCHB also concluded that Raymond Reser failed to establish with facts any of the elements of estoppel.

Raymond Reser sought judicial review of the PCHB decision with the Walla Walla County Superior Court. The superior court transferred judicial review to this court without addressing the merits.

9

No. 39115-9-III,
*Reser v. Pollution Control Hearings Board, et al*

LAW AND ANALYSIS

On judicial review of the PCHB ruling, Raymond Reser renews his two principal contentions before the PCHB. He argues that the PCHB erred when ruling he failed to establish what we label as the "crop rotation relinquishment exception" found in RCW 90.14.140(1)(k). Reser also argues that the doctrine of equitable estoppel bars Ecology from alleging nonuse of water rights on Ferguson Farm prior to March 29, 2000 because in 1995, Watermaster Bill Neve wrote that water rights were "appurtenant" to Ferguson Farm.

Crop Rotation Relinquishment Exception

On judicial review of the PCHB ruling, Raymond Reser agrees that water on Ferguson Farm went unused from 1981 to 1996. He claims, nonetheless, that the PCHB erred in determining he failed to prove crop rotation between 1982 and 2000 sufficed to prevent relinquishment of the water right. The PCHB actually ruled that he did not meet his burden of proving the applicability of the crop rotation exemption to the period of nonuse beginning in 1981 and ending in 1996, during which time K-Farms rented Ferguson Farm. Therefore, we focus on that fifteen-year period of nonuse when analyzing whether evidence established a temporary crop rotation occurred.

In his assignment of error, Raymond Reser does not explicitly argue that the PCHB improperly granted summary judgment on the issue of sufficient cause. Nevertheless, his arguments, requested relief, and references to summary judgment imply

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 39115-9-III,
*Reser v. Pollution Control Hearings Board, et al*

that the PCHB erred in granting summary judgment because material facts concerning the

applicability of the crop rotation exemption to the failure to beneficially use the water

rights on Ferguson Farm from 1981 and 1996 remain in dispute. Thus, we address

whether the evidence submitted creates disputed issues of material fact. CR 56(c). While

the administrative procedure act does not explicitly authorize summary judgment

proceedings, caselaw permits agencies to hold such proceedings. *Kettle Range*

*Conservation Group v. Department of Natural Resources*, 120 Wn. App. 434, 456, 85

P.3d 894 (2003); *Eastlake Community Council v. City of Seattle*, 64 Wn. App. 273, 276,

823 P.2d 1132 (1992).

Washington follows the western scheme of water rights based on appropriation.

*Loyal Pig, LLC v. Department of Ecology*, 13 Wn. App. 2d 127, 140, 463 P.3d 106

(2020). Under the appropriation system, the water right holder must put the water

claimed under the right to beneficial use or the holder relinquishes the right. RCW

90.14.160; *Department of Ecology v. Theodoratus*, 135 Wn.2d 582, 595, 957 P.2d 1241

(1998). Not only must the water right holder appropriate the water to gain the right to

apply a quantity of water to appurtenant land, but the holder must continue to appropriate

the water to preserve the right.

RCW 90.14.160 declares:

> [a]ny person entitled to divert or withdraw waters of the state
> through any appropriation. . . who abandons the same, or who voluntarily
> fails, *without sufficient cause*, to beneficially use all or any part of said right

11

No. 39115-9-III,
*Reser v. Pollution Control Hearings Board, et al*

> to divert or withdraw for any period of five successive years . . ., shall relinquish such right or portion thereof, and said right or portion thereof shall revert to the state, and the waters affected by said right shall become available for appropriation in accordance with RCW 90.03.250.

(Emphasis added.) RCW 90.14.170 and RCW 90.14.180 provide similar language in that they require relinquishment of water rights when the right-holder ultimately fails to make beneficial use of such rights for five consecutive years without sufficient cause. The pending dispute requires us to analyze one of the sufficient causes recognized as an exception to forfeiture.

RCW 90.14.140(1) lists the sufficient cause exceptions to water rights relinquishment. The crop rotation exemption identified in RCW 90.14.140(1)(k) bears relevance to this appeal. RCW 90.14.140 states:

> (1) For the purposes of RCW 90.14.130 through 90.14.180, "sufficient cause" shall be defined as the nonuse of all or a portion of the water by the owner of a water right for a period of five or more consecutive years where such nonuse occurs as a result of:
> . . . .
> (k) The reduced use of irrigation water resulting from *crop rotation*. For purposes of this subsection, crop rotation means *the temporary change in the type of crops grown* resulting from the *generally recognized sound farming practices*. Unused water resulting from crop rotation will not be relinquished if the remaining portion of the water continues to be beneficially used.

(Emphasis added.) Subsection (k) introduces three concepts, which overlap: crop rotation, temporary change in the types of crops grown, and generally recognized sound

12

No. 39115-9-III,
*Reser v. Pollution Control Hearings Board, et al*

farming practices. The Washington water code does not define any of these conceptions. No Washington decision has calibrated the parameters of the trio of concepts.

We agree that, based on the expert testimony of Robert Thornton, K-Farms and later Raymond Reser engaged in sound farming practices. But Reser concedes that Thornton rendered no opinion as to whether a temporary change in crops grown occurred. We focus on whether a temporary change in crops resulting from applying sound farming practices occurred.

We narrowly construe the exceptions to relinquishment outlined in RCW 90.14.140(1) in order to implement legislative intent underlying the general provisions. *R.D. Merrill Co. v. Pollution Control Hearings Board*, 137 Wn.2d 118, 140, 969 P.2d 458 (1999). The party claiming sufficient cause for nonuse bears the burden of showing how its nonuse falls under one of the narrow categories in RCW 90.14.140. *R.D. Merrill Co. v. Pollution Control Hearings Board*, 137 Wn.2d 118, 140 (1999); *Department of Ecology v. Acquavella*, 131 Wn.2d 746, 758, 935 P.2d 595 (1997).

We interpret statutes to give effect to the legislative intent. *State v. Evans*, 177 Wn.2d 186, 193, 298 P.3d 724 (2013). We derive meaning from the context of the provision within the statute, as well as related statutes that disclose legislative intent. *Fode v. Department of Ecology*, 22 Wn. App. 2d 22, 30, 509 P.3d 325 (2022). An undefined term is given its plain and ordinary meaning unless a contrary legislative intent is indicated. *State v. Ervin*, 169 Wn.2d 815, 820, 239 P.3d 354 (2010).

13

No. 39115-9-III,
*Reser v. Pollution Control Hearings Board, et al*

DOE emphasizes language in RCW 90.03.390, which declares in part: "RCW 90.03.380 shall not be construed to prevent water users from making a *seasonal or temporary* change of point of diversion or place of use of water." (Emphasis added.) Based on this language in this other water rights statute, DOE contends that "temporary" is synonymous with "seasonal," which would require a change in crops once a year. Black's Law Dictionary (11th ed. 2019) defines "temporary" as "transitory" and "limited."

The law imposes no maximum number of years allowed to qualify as a "temporary" change under RCW 90.14.140(1)(k). Unless one views the passage of time on earth from the vantage of God, to whom a thousand years is like a day just gone by, or from the vantage of the billions of years since the Big Bang, five years seems beyond the realm of temporary. Nevertheless, because we apply the crop rotation relinquishment exception only when the right would otherwise be relinquished, a "temporary change" must encompass at least a window of time lasting five years. Perhaps the law might require that, during each of those years, there is a change in a crop, but we need not decide such. Raymond Reser seeks to expand the notion of temporary to fifteen years.

Since we must view exemptions narrowly, we conclude, based on the undisputed facts as to K-Farms' use of Ferguson Farm, that no temporary change in crops occurred based on sound farming practices. K-Farms changed the land's crop when it began its lease. Although K-Farms may have engaged in sound farming practices, no Kimball

14

No. 39115-9-III,
*Reser v. Pollution Control Hearings Board, et al*

family member expressed that K-Farms' change from irrigated asparagus to dryland wheat resulted from sound farming practices. K-Farms never rotated to another crop during its fifteen-year lease. No Kimball testified that K-Farms deemed any change in crops to be temporary or that K-Farms intended to change to another crop.

Wikipedia, an expression of common understanding, describes "crop rotation" as:

> Crop rotation is the practice of growing a series of different types of crops in the same area across a sequence of growing seasons. This practice reduces the reliance of crops on one set of nutrients, pest and weed pressure, along with the probability of developing resistant pests and weeds.

https://en.wikipedia.org/wiki/Crop_rotation (last visited Oct. 6. 2023). The raising of crops from 1982 to 1996 does not fit this description.

Raymond Reser cites WAC 173-430-030(1), which recognizes agricultural burning as a practice that may be undertaken for crop rotation purposes. Nevertheless, WAC 173-430-030 does not provide any legal rules. The regulation provides definitions of terms found in the provision of chapter 173-400 WAC. WAC 173-430-030(1) defines "agricultural burning" as:

> the burning of vegetative debris from an agricultural operation necessary for disease or pest control, *necessary for crop propagation or crop rotation*, or where identified as a best management practice by the agricultural burning practices and research task force established in RCW 70.94.6528(6) or other authoritative source on agricultural practices. Propane flaming for the purpose of vegetative debris removal is considered commercial agricultural burning.

(Emphasis added.)

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 39115-9-III,
*Reser v. Pollution Control Hearings Board, et al*

The language of WAC 173-430-030(1) indicates that agricultural burning may be performed on land for reasons *related* to crop rotation and reasons *unrelated* to crop rotation. Just because K-Farms performed agricultural burning on the land at issue does not automatically indicate that it undertook the practice for crop rotation purposes.

Estoppel

On March 1995, Raymond Reser's counsel, by letter, asked DOE Watermaster Bill Neve whether there was a "recorded water right" on Ferguson Farm and whether "a water right existed." CP at 250. Neve replied by attaching a water right certificate to the correspondence and penning that the water right was "appurtenant to" Ferguson Farm. CP at 141. We must decide whether Neve's response works an estoppel that precludes DOE from now asserting that a five-year period of nonuse caused a relinquishment.

A party asserting equitable estoppel must prove the following elements by clear, cogent, and convincing evidence:

> (1) an admission, statement or act inconsistent with a claim later asserted, (2) reasonable reliance on that admission, statement, or act by the other party, and (3) injury to the relying party if the court permits the first party to contradict or repudiate the admission, statement or act.

*Department of Ecology v. Theodoratus*, 135 Wn.2d 582, 599 (1998). If a party asserts equitable estoppel against the government, the party must establish two additional elements. Because asserting equitable estoppel against the government is disfavored, (4) asserting the doctrine must be necessary to prevent a manifest injustice, and (5) the

16

No. 39115-9-III,
*Reser v. Pollution Control Hearings Board, et al*

exercise of government functions must not be impaired as a result of estoppel.

*Department of Ecology v. Theodoratus*, 135 Wn.2d 582, 599 (1998). To prove manifest

justice, the evidence must present unmistakable justification for imposition of the

doctrine when a municipality has acted in its governmental capacity. *City of Mercer*

*Island v. Steinmann*, 9 Wn. App. 479, 482, 513 P.2d 80 (1973).

      We note that Raymond Reser's counsel did not expressly ask in his 1995 letter

whether the water right was legal or valid. He instead asked if there was an existing

water right appurtenant to the property. Existing may imply an unenforceable right.

Watermaster Bill Neve employed the word "appurtenant," and Reser claims the word

"appurtenant" is tantamount to a legal right.

      We further note that Raymond Reser knew or could have known, at the time of his

counsel's letter, that K-Farms had not watered Ferguson Farm for fifteen years and that

the irrigation equipment was in disrepair. We do not know whether Reser informed his

counsel of these facts, but counsel never volunteered such facts to Watermaster Bill

Neve. No facts suggest that Neve conducted any investigation into the water use on

Ferguson Farm, any relinquishment of the water right, or the enforceability of the water

certificate. Neve never expressly declared that Ferguson Farm's water certificate

remained binding on DOE.

      We question whether, under the undisputed circumstances, Raymond Reser could

reasonably rely on any representation of the DOE Watermaster as to whether or not

17

No. 39115-9-III,
*Reser v. Pollution Control Hearings Board, et al*

Ferguson Farm's water right had been forfeited. We question whether manifest justice demands estoppel when counsel's letter never disclosed the circumstances behind the nonuse of water on the farmland. We also question whether working an estoppel would impair a government function.

Regardless of whether other elements apply, we reject application of estoppel, as a matter of law. To prevail, Raymond Reser must show that Watermaster Bill Neve represented that the water right was enforceable. We doubt Neve did so, but, if he did, such a representation constituted a legal representation.

When the representation allegedly relied on is a matter of law, rather than fact, equitable estoppel will not apply. *Department of Ecology v. Theodoratus*, 135 Wn.2d 582, 599 (1998). Whether DOE can issue a landholder a water right certificate on any basis other than actual beneficial use is an issue of law. *Department of Ecology v. Theodoratus*, 135 Wn.2d 582, 600 (1998). Whether a water right remains valid despite nonuse also constitutes a question of law.

CONCLUSION

We affirm the PCHB's decision holding that water rights on Ferguson Farm were relinquished and the doctrine of estoppel does not preclude DOE from relinquishing the right.

18

No. 39115-9-III,
*Reser v. Pollution Control Hearings Board, et al*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____                    _____
Lawrence-Berrey, J.                                 Staab, J.